# EXHIBIT A

**BROCK & GONZALES, LLP**
9000 SUNSET BLVD., STE. 1260
LOS ANGELES, CA 90069
Tel: (310) 294-9595
Fax: (310) 961-3673
TIMOTHY J. GONZALES, STATE BAR NO. 234923
D. AARON BROCK, STATE BAR NO. 241919
CHRISTOPHER P. BRANDES, STATE BAR NO. 282801

**TAYLOR & RING, LLP**
1230 Rosecrans Ave., Ste. 260
Manhattan Beach, CA 90266
Tel: (310) 294-9595
Fax: (310) 961-3673
JOHN C. TAYLOR, SBN: 78389
DAVID M. RING, SBN: 151124

Attorneys for Plaintiff
SUSAN BRACKEN

**FILED**
Superior Court of California
County of Los Angeles

**AUG 21 2017**

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shasma Briden

40 Sotelo

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES – CENTRAL**

| | |
|---|---|
| JANE DOE, an individual, | Case No.: **BC 673140** |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR DAMAGES FOR:** |
| vs. | |
| EQUINOX HOLDINGS, INC., a Delaware corporation; DEREK MALLARD, an individual; and DOES 1-50, inclusive, | 1. SEXUAL HARASSMENT; 2. SEXUAL ASSAULT, BATTERY AND RATIFICATION; 3. DISABILITY DISCRIMINATION; 4. FAILURE TO ACCOMMODATE; 5. FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS; |
| Defendants. | 6. RETALIATION; 7. FAILURE TO INVESTIGATE AND PREVENT; 8. VIOLATION OF CALIFORNIA LABOR CODE SECTION 230(f); 9. VIOLATION OF CALIFORNIA LABOR CODE SECTION 230(e); 10. VIOLATION OF CALIFORNIA LABOR CODE SECTION 230.1; and 11. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY. |

**DEMAND FOR JURY TRIAL**

1

COMPLAINT FOR DAMAGES

1  Plaintiff, JANE DOE, hereby brings her employment complaint, demanding a trial by
2  jury, against the above-named Defendants and states and alleges as follows:

3  **THE PARTIES**

4  1.  At all times mentioned herein, Plaintiff, JANE DOE, was an individual and a
5  resident of the State of California. Plaintiff was the victim of sexual assault perpetrated by a co-
6  worker in her workplace. Plaintiff's employment was later wrongfully terminated because she
7  had to take a leave of absence from work to treat and recover from the disabling emotional
8  injuries she suffered as a result of the assault. Because Plaintiff is a victim of a sexual assault,
9  she is entitled to protect her identity in this public filing.

10  2.  Plaintiff is informed and believes, and based thereon alleges, that Defendant
11  EQUINOX HOLDINGS, INC. ("Equinox") is a Delaware corporation, doing business as a
12  fitness club in County of Los Angeles, State of California, at 8690 Sunset Boulevard, West
13  Hollywood, California 90069. Defendant Equinox was Plaintiff's employer and wrongfully
14  terminated her employment.

15  3.  At all times mentioned herein, and at the time each of Plaintiff's causes of action
16  arose, Defendant DEREK MALLARD was an individual and a resident of the State of
17  California. Defendant Mallard was also employed by Defendant Equinox when he sexually
18  harassed/assaulted Plaintiff in the workplace.

19  4.  Plaintiff is informed and believes, and based thereon alleges, that Defendant
20  Equinox knew or should have known of the Defendant Mallard's propensity to engage in
21  sexually harassing conduct but failed to take immediate and appropriate corrective action, which
22  allowed the sexual assault of Plaintiff to occur.

23  5.  Plaintiff is unaware of the true names and capacities of Defendants sued herein as
24  DOES 1 through 50, inclusive, and for that reason sues said Defendants by such fictitious names.
25  Each of the Defendants designated herein as a DOE is negligently, intentionally, or otherwise
26  legally responsible in some manner for the events and happenings herein referred to and caused
27  injuries and damages proximately thereby to the Plaintiff, as herein alleged. Plaintiff will file and

28

2

**COMPLAINT FOR DAMAGES**

1  serve one or more amendments to this complaint upon learning the true names and capacities of

2  said Defendants.

3       6.    Plaintiff is informed and believes that each of the fictitiously named Defendants is

4  responsible in some manner for, and proximately caused, the injuries and damages to Plaintiff

5  hereinafter alleged.

6       7.    Plaintiff is informed and believes, and based thereon alleges, that each of the

7  Defendants named herein acted as the employee, agent, servant, partner, alter-ego and/or joint

8  venturer of one or more of the other Defendants named herein. In doing the acts and/or

9  omissions alleged herein, each of said Defendants acted within the course and scope of his or her

10  relationship with any other Defendant; and gave and received full consent, permission and

11  ratification to the acts and/or omissions alleged herein.

12       8.    Hereinafter in this Complaint, unless otherwise noted, reference to a Defendant shall

13  mean all Defendants, and each of them.

14                              **FACTUAL ALLEGATIONS**

15       9.    Defendant Equinox owns and operates fitness clubs in the United States, the United

16  Kingdom and Canada. The company offers services in the areas of barre, conditioning, martial

17  arts, Pilates, yoga and studio cycling. It also offers spa services, including massages, facials,

18  laser treatments, body treatments, waxing, manicure/pedicure and healing therapies.

19       10.   Plaintiff was employed by Defendant Equinox as a Pilates Instructor at Defendant

20  Equinox's West Hollywood, California location. She began her employment in or around

21  January 2014. Defendant Equinox wrongfully terminated her employment on or about July 27,

22  2017.

23       11.   Throughout Plaintiff's employment, she performed her job duties in an exemplary

24  manner. In fact, she quickly became one of Defendant Equinox's top instructors.

25       12.   Defendant Equinox encourages its employees to "trade" services with each other so

26  that its employees are exposed to what other employees within the fitness club offer to members.

27  This helps employees to refer clients to one another. Employees are also encouraged to "reward"

28  their co-workers with free services for referring clients.

3

**COMPLAINT FOR DAMAGES**

13.    In the course and scope of her employment, Plaintiff would frequently trade services with Defendant Mallard, who was a massage therapist with Defendant Equinox at the location where Plaintiff worked. Specifically, Plaintiff provided Defendant Mallard with Pilates sessions in exchange for message therapy treatments. Plaintiff referred numerous clients to Defendant Mallard for massage treatments. Defendant Mallard also referred clients to Plaintiff for Pilates sessions.

14.    On or about September 3, 2016, at approximately 1:30 p.m., Defendant Mallard provided Plaintiff with a massage at Defendant Equinox's spa. Plaintiff is informed and believes, and based thereon alleges, that Defendant Mallard was intoxicated by marijuana when he began massaging Plaintiff. During the massage, Defendant Mallard sexually assaulted Plaintiff. The assault consisted of unwanted touching of Plaintiff's breasts and digital penetration of Plaintiff's vagina and anus. Defendant Mallard also placed his penis on Plaintiff's body. Like many victims of attack and terror, Plaintiff's brain "froze" and she experienced "dissociation" during the intimate violation. Eventually, Plaintiff abruptly sat up to end the massage. Defendant Mallard then said, "Oh, I have to be careful, my crush just came out."

15.    Plaintiff was confused and distraught. That night, she called her work manager and reported Defendant Mallard's assault. Shockingly, the manager told Plaintiff that she knew of at least four employees and three clients who had reported to Defendant Equinox that they had felt uncomfortable during a massage with Defendant Mallard. Defendant Equinox, therefore, knew, or should have known, about Defendant Mallard's sexually harassing conduct but failed to take immediate and appropriate corrective action, which allowed the sexual assault and harassment of Plaintiff to occur.

16.    After talking with her manager, Plaintiff made a complaint with Defendant Equinox's corporate Human Resources Department. She expressed her concern about continuing to work with Defendant Mallard and that she feared he would retaliate against her for reporting him. She also informed Defendant Equinox that she had referred a large number of female members to Defendant Mallard and was afraid that he may have assaulted other women, especially since Defendant Mallard sometimes massaged these women at their homes. She

4

**COMPLAINT FOR DAMAGES**

Doc# 1 Page# 4 - Doc ID = 1707357149 - Doc Type = OTHER

1  provided Defendant Equinox with these clients' names and asked that Defendant Equinox

2  immediately contact and warn them about Defendant Mallard.

3      17.   Initially, Defendant Equinox seemed concerned for the safety of its members;

4  however, on or about September 7, 2016, Defendant Equinox's Regional Director of Human

5  Resources, Emerson Figueroa, told Plaintiff that Defendant Equinox was not going to contact the

6  clients and instructed Plaintiff not to warn them either.

7      18.   Plaintiff, however, took it upon herself to protect Defendant Equinox's paying

8  members from Defendant Equinox's dangerous employee. She sent a text to the clients she

9  referred to Defendant Mallard, stating that "she can longer recommend [Defendant Mallard] for

10 massage therapy." Within minutes, Plaintiff was contacted by several female clients who

11 reported that they, too, were victims of Defendant Mallard.

12     19.   Plaintiff is informed and believes, and based thereon alleges, that one or more of

13 these clients complained to Defendant Equinox about Defendant Mallard after Plaintiff sent her

14 text message. It was only after these complaints that Defendant Equinox terminated Defendant

15 Mallard's employment. Still, Plaintiff is informed and believes, and based thereon alleges, that

16 Defendant Equinox decided to protect itself from future litigation by choosing not to terminate

17 Defendant Mallard for his sexually harassing conduct towards Plaintiff and others, but instead

18 for allegedly stealing clients from Defendant Equinox.

19     20.   Following Defendant Mallard's termination, Defendant Equinox's Regional Director

20 of Human Resources, Emerson Figueroa, told Plaintiff that she should return to work. Plaintiff

21 told Mr. Figueroa that she was concerned for her safety at work and asked for accommodation by

22 having an employee walk her to and from her car and/or provide her with a parking space outside

23 the parking structure. Mr. Figueroa denied Plaintiff's accommodation request, telling Plaintiff

24 that "it's not like [Defendant Mallard] physically hurt [her]" and that Defendant Equinox was

25 only responsible for her wellbeing while she was in the gym itself and not anywhere else.

26     21.   Because of the disabling emotional effects of the assault and/or Defendant's failure

27 to make safety accommodations, Plaintiff requested to take a leave of absence from work to seek

28 psychological counseling for the injuries she sustained in the assault.

5

**COMPLAINT FOR DAMAGES**

22. Defendant Equinox initially granted Plaintiff's leave request, However, on or about July 27, 2017, Defendant Equinox abruptly stopped accommodating Plaintiff, denied her any further leave and wrongfully terminated her employment, for no legitimate reason:

From: HR West <HRWest@equinox.com>
Date: July 27, 2017 at 3:02:32 PM PDT
To: ████████████████████
Cc: HR West <HRWest@equinox.com>
████████████████████
████████████████████

Thank you for your response. Per the memo we sent via mail dated Monday 7/24 you've been out on leave since September 5, 2016. At this point you have exhausted any job protected time off. We approved several leave extensions for you in the past, however we are unable to approve further extensions at this point in time.

Although we received your medical note sent to us Thursday 7/27, in which your doctor stated that you remain temporarily disabled until August 28, 2017, this extension is not approved. We are separating employment effective today, Thursday, 7/27/17. You are more than welcome to reapply in the future if and when your doctor removes or updates your work restrictions.

If you have any further questions, please contact HRWest@equinox.com.

From: ████████████████████
Sent: Thursday, July 27, 2017 12:03 PM
To: HR West <HRWest@equinox.com>; John Strachan <john.strachan@equinox.com>
Subject: Fwd: Disability Letter

To Whom it may concern,

Below is the contact information to my worker's compensation case worker and a letter from my psychologist that I have been seeing regularly since being sexually assaulted by Derek Mallard at Equinox WEHO. I am also seeing a psychiatrist and a therapist that specializes in assault, trauma, PTSD and anxiety.

I have been actively working on healing from this and look forward to the day that I can return to work. I loved my job teaching pilates at Equinox and do not want to lose it.

I hope this is helpful. Please let me know if there is anything else that you need.

23. Plaintiff is informed and believes, and based thereon alleges, that Defendant Equinox failed to accommodate Plaintiff's disability and terminated Plaintiff on account of her disability and/or because she was a victim of sexual assault and needed accommodation.

6

**COMPLAINT FOR DAMAGES**

## EXHUSTION OF ADMINISTRATIVE REMEDIES

24.  Plaintiff filed a complaint against Defendants with the Department of Fair Employment and Housing ("DFEH") on August 18, 2017. The DFEH issued Plaintiff a "Right-to-Sue" letter that same day. This Complaint is timely filed pursuant to that letter.

### FIRST CAUSE OF ACTION

### SEXUAL HARASSMENT

### IN VIOLATION OF THE FEHA

### (Against ALL Defendants)

25.  Plaintiff restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 24 of this Complaint.

26.  At all times herein mentioned, California Government Code § 12940 et seq., the Fair Employment and Housing Act ("FEHA"), was in full force and effect and was binding on Defendants, as Defendants regularly employed five or more persons.

27.  California Government Code § 12940(a) requires Defendants to refrain from harassing an employee based on sex.

28.  Defendant engaged in unlawful employment practices in violation of the FEHA by harassing Plaintiff because her sex.

29.  As a proximate result of the aforesaid acts of Defendants, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to California Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

30.  As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes, and thereupon alleges, that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

7

31.   As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).

32.   Defendants' conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff. Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above. Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct.

## SECOND CAUSE OF ACTION

### SEXUAL ASSAULT, BATTERY AND RATIFICATION

### (Against ALL Defendants)

33.   Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 32, above, as if set forth in full.

34.   Defendant Mallard acted with intent to cause a harmful or offensive contact to Plaintiff and this offensive contact occurred. Plaintiff did not consent to being touched by Defendant.

35.   Thereafter, Defendant Equinox ratified the harmful and offensive conduct.

36.   As a direct and proximate result of the tortious actions of Defendants, and each of them, Plaintiff has been injured. All of said injuries have caused, and continue to cause her great mental, physical pain and suffering. Plaintiff is informed and believes, and thereon alleges that said injuries will result in some permanent injury to Plaintiff, all to her general damages in a sum within the jurisdiction of this Court according to proof at time of trial.

37.   Defendants' conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by Defendant to her. Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above. Plaintiff should, therefore, be awarded exemplary and punitive

8

**COMPLAINT FOR DAMAGES**

B&G | BROCK & GONZALES

Doc# 1 Page# 8 - Doc ID = 1707357149 - Doc Type = OTHER

1 | damages against each Defendant in an amount to be established that is appropriate to punish each

2 | Defendant and deter others from engaging in such conduct.

3 | ### THIRD CAUSE OF ACTION

4 | ### DISABILITY DISCRIMINATION

5 | ### IN VIOLATION OF THE FEHA

6 | **(Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)**

7 | 38.    Plaintiff restates and incorporates by this reference as if fully set forth herein

8 | paragraphs 1 through 37 of this Complaint.

9 | 39.    At all times herein mentioned, the FEHA was in full force and effect and was

10 | binding on Defendants, as Defendants regularly employed five or more persons.

11 | 40.    The FEHA requires Defendants to refrain from discriminating against any employee

12 | based on disability.

13 | 41.    Defendant engaged in unlawful employment practices in violation of the FEHA.

14 | 42.    As a proximate result of the aforesaid acts of Defendants, Plaintiff has suffered

15 | actual, consequential and incidental financial losses, including without limitation, loss of salary

16 | and benefits, and the intangible loss of employment related opportunities in her field and damage

17 | to her professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff

18 | claims such amounts as damages pursuant to California Civil Code § 3287 and/or § 3288 and/or

19 | any other provision of law providing for prejudgment interest.

20 | 43.    As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and

21 | continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well

22 | as the manifestation of physical symptoms.  Plaintiff is informed and believes, and thereupon

23 | alleges, that she will continue to experience said physical and emotional suffering for a period in

24 | the future not presently ascertainable, all in an amount subject to proof at the time of trial.

25 | 44.    As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced

26 | to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to

27 | incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover attorneys'

28 | fees and costs under California Government Code § 12965(b).

9

**COMPLAINT FOR DAMAGES**

45.    The actions taken against Plaintiff were carried out and ratified by officers and managers of Defendant. In addition, Defendant had in place policies and procedures that specifically prohibited discrimination based on disability and required Defendant's managers, officers, and agents to prevent disability discrimination. However, Defendants chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff.  Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above. Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct in the future.

## FOURTH CAUSE OF ACTION

### FAILURE TO ACCOMMODATE

### IN VIOLATION OF THE FEHA

### (Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)

46.    Plaintiff restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 45 of this Complaint.

47.    At all times herein mentioned, the FEHA was in full force and effect and was binding on Defendants, as Defendants regularly employed five or more persons.  The FEHA imposes upon employers certain affirmative duties when confronted with an employee who has a disability and/or medical condition.

48.    Defendants failed to fulfill their affirmative duty to reasonably accommodate Plaintiff with a finite leave of absence. Defendants' actions were in direct contravention of the FEHA.

49.    Plaintiff alleges that with reasonable accommodations she could have fully performed all duties and functions of her job in an adequate, satisfactory and/or outstanding manner.

10

**COMPLAINT FOR DAMAGES**

Doc# 1 Page# 10 - Doc ID = 1707357149 - Doc Type = OTHER

50.   As a direct and legal result of Defendants' discriminatory actions herein referenced, Plaintiff has suffered and continues to suffer general and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, all to her damage in an amount according to proof.

51.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).

52.   The actions taken against Plaintiff were carried out and ratified by officers and managers of Defendant. In addition, Defendant had in place policies and procedures to accommodate the disability of its employees.  However, Defendants chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff.  Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above.  Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct in the future.

### FIFTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

### IN VIOLATION OF THE FEHA

### (Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)

53.   Plaintiff restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 52 of this Complaint.

54.   The FEHA makes it unlawful for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any.

11

**COMPLAINT FOR DAMAGES**

55. Defendants failed to engage in a timely, good faith, interactive process with Plaintiff to accommodate her known disability and/or medical condition in violation of the FEHA.

56. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

57. As a direct and legal result of Defendants' discriminatory actions herein referenced, Plaintiff has suffered and continues to suffer general and special damages including but not limited to substantial losses in earnings, other employment benefits and emotional distress, all to her damage in an amount according to proof.

58. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).

59. The actions taken against Plaintiff were carried out and ratified by officers and managers of Defendants. In addition, Defendants had in place policies and procedures that specifically required it to engage in the interactive process to accommodate the disabilities of its employees. However, Defendants chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard of the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff. Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above. Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct in the future.

///
///
///
///

**COMPLAINT FOR DAMAGES**

Doc# 1 Page# 12 - Doc ID = 1707357149 - Doc Type = OTHER

## SIXTH CAUSE OF ACTION

### RETALIATION

### IN VIOLATION OF THE FEHA

**(Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)**

60. Plaintiff restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 59 of this Complaint.

61. At all times herein mentioned, the FEHA was in full force and effect and were binding on Defendants, as Defendant regularly employed five or more persons. The FEHA makes it unlawful for any person to retaliate against an employee who has opposed a discriminatory practice and who asserts their rights under the FEHA.

62. · Defendants' conduct as alleged above constituted unlawful retaliation in violation of the FEHA.

63. As a proximate result of the aforesaid acts of Defendants, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to California Government Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

64. As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

65. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under California Government Code § 12965(b).

13

**COMPLAINT FOR DAMAGES**

Doc# 1 Page# 13 - Doc ID = 1707357149 - Doc Type = OTHER

66. The actions taken against Plaintiff were carried out and ratified by officers and managers of Defendants. In addition, Defendant had in place policies and procedures that specifically prohibited retaliation and required Defendant's managers, officers, and agents to prevent retaliation. However, Defendants chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff. Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above. Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct in the future.

## SEVENTH CAUSE OF ACTION

### FAILURE TO INVESTIGATE AND PREVENT

### IN VIOLATION OF THE FEHA

### (Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)

67. Plaintiff restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 66 of this Complaint.

68. At all times mentioned herein, California Government Code Sections 12940, et seq., including but not limited to Sections 12940 (j) and (k), were in full force and effect and were binding upon Defendants and each of them. These sections impose on an employer a duty to take immediate and appropriate corrective action to end discrimination, harassment and retaliation and take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.

69. Defendants failed to take immediate and appropriate corrective action to end the discrimination, harassment and retaliation.

70. In failing and/or refusing to take immediate and appropriate corrective action to end the discrimination, harassment and retaliation, and in failing and/or refusing to take and or all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring,

14

**COMPLAINT FOR DAMAGES**

Doc# 1 Page# 14 - Doc ID = 1707357149 - Doc Type = OTHER

Defendants violated <u>California Government Code</u> § 12940 (j) and (k), causing Plaintiff to suffer damages as set forth above.

71. As a proximate result of the aforesaid acts of Defendants, and each of them, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to <u>Civil Code</u> § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

72. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

73. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under <u>California Government Code</u> § 12965(b).

74. The actions taken against Plaintiff were carried out and ratified by officers and managers of Defendants. In addition, Defendant had in place policies and procedures to prevent discrimination and retaliation. However, Defendants chose to consciously and willfully ignore said policies and procedures and therefore, their outrageous conduct was fraudulent, malicious, oppressive, and was done in wanton disregard for the rights of Plaintiff and the rights and duties owed by each Defendant to Plaintiff. Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the wrongful conduct alleged above. Plaintiff should, therefore, be awarded exemplary and punitive damages against each Defendant in an amount to be established that is appropriate to punish each Defendant and deter others from engaging in such conduct in the future.

15

**COMPLAINT FOR DAMAGES**

Doc# 1 Page# 15 - Doc ID = 1707357149 - Doc Type = OTHER

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA LABOR CODE SECTION 230(f)

### (Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)

75.    Plaintiff restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 74 of this Complaint.

76.    California Labor Code Section 230(f)(1) states that "[a]n employer shall provide reasonable accommodations for a victim of domestic violence, sexual assault, or stalking who requests an accommodation for the safety of the victim while at work. According to California Labor Code Section(f)(2), "reasonable accommodations may include the implementation of safety measures, including a transfer, reassignment, modified schedule, changed work telephone, changed work station, installed lock, assistance in documenting domestic violence, sexual assault, or stalking that occurs in the workplace, an implemented safety procedure, or another adjustment to a job structure, workplace facility, or work requirement in response to domestic violence, sexual assault, or stalking, or referral to a victim assistance organization."

77.    California Labor Code Section(f)(4) also mandates that an employer engage in a timely, good faith, and interactive process with the employee to determine effective reasonable accommodations.

78.    Defendant violated California Labor Code Section 230(f).

79.    According to California Labor Code Section(g)(2), "[a]n employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated or retaliated against in the terms and conditions of employment by his or her employer for reasons prohibited in subdivision (c) or (e), or because the employee has requested or received a reasonable accommodation as set forth in subdivision (f), shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer, as well as appropriate equitable relief.

80.    Further, an employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or

Doc# 1  Page# 16 - Doc ID = 1707357149 - Doc Type = OTHER

B&G | BROCK & GONZALES

08/22/2017

1 | promotion by a grievance procedure or hearing authorized by law is guilty of a misdemeanor,

2 | pursuant to California Labor Code Section(g)(3).

3 | ### NINTH CAUSE OF ACTION

4 | **VIOLATION OF CALIFORNIA LABOR CODE SECTION 230(e)**

5 | **(Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)**

6 | 81.   Plaintiff restates and incorporates by this reference as if fully set forth herein

7 | paragraphs 1 through 80 of this Complaint.

8 | 82.   California Labor Code Section 230(e) prohibits an employer from discharging or in

9 | any manner discriminating or retaliating against an employee because of the employee's status as

10 | a victim of domestic violence, sexual assault, or stalking.

11 | 83.   Defendant violated California Labor Code Section 230(e).

12 | 84.   According to California Labor Code Section(g)(2), "[a]n employee who is

13 | discharged, threatened with discharge, demoted, suspended, or in any other manner

14 | discriminated or retaliated against in the terms and conditions of employment by his or her

15 | employer for reasons prohibited in subdivision (c) or (e), or because the employee has requested

16 | or received a reasonable accommodation as set forth in subdivision (f), shall be entitled to

17 | reinstatement and reimbursement for lost wages and work benefits caused by the acts of the

18 | employer, as well as appropriate equitable relief.

19 | 85.   Further, an employer who willfully refuses to rehire, promote, or otherwise restore

20 | an employee or former employee who has been determined to be eligible for rehiring or

21 | promotion by a grievance procedure or hearing authorized by law is guilty of a misdemeanor,

22 | pursuant to California Labor Code Section(g)(3).

23 | ### TENTH CAUSE OF ACTION

24 | **VIOLATION OF CALIFORNIA LABOR CODE SECTION 230.1**

25 | **(Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)**

26 | 86.   Plaintiff restates and incorporates by this reference as if fully set forth herein

27 | paragraphs 1 through 85 of this Complaint.

28 |

B&G | BROCK & GONZALES

03/22/2019

17

**COMPLAINT FOR DAMAGES**

Doc# 1 Page# 17 - Doc ID = 1707357149 - Doc Type = OTHER

87.    California Labor Code Section 230.1(a) prohibits an employer with 25 or more employees shall not discharge, or in any manner discriminate or retaliate against, an employee who is a victim of domestic violence, sexual assault, or stalking for taking time off from work for any of the following purposes: (1) To seek medical attention for injuries caused by domestic violence, sexual assault, or stalking; (2) To obtain services from a domestic violence shelter, program, or rape crisis center as a result of domestic violence, sexual assault, or stalking; (3) To obtain psychological counseling related to an experience of domestic violence, sexual assault, or stalking; (4) To participate in safety planning and take other actions to increase safety from future domestic violence, sexual assault, or stalking, including temporary or permanent relocation.

88.    Defendant violated California Labor Code Section 230.1.

89.    Pursuant to California Labor Code Section 230.1(c), an employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated or retaliated against in the terms and conditions of employment by his or her employer because the employee has taken time off for a purpose set forth in subdivision (a) is entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer, as well as appropriate equitable relief. An employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure or hearing authorized by law is guilty of a misdemeanor.

## ELEVENTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against Defendants EQUINOX HOLDINGS, INC. & DOES 1-50)

90.    Plaintiff restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 89 of this Complaint.

91.    At all times mentioned, the public policy of the State of California, as codified, expressed and mandated in the FEHA and/or California Labor Code Sections 230 and 230.1 is to prohibit employers from discriminating and retaliating against any individual based on

18

**COMPLAINT FOR DAMAGES**

# EXHIBIT B



> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Beazley One Management Liability Insurance Policy**

**DECLARATIONS**

**NOTICE: THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY SUBJECT TO ITS TERMS. IT APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE UNDERWRITERS AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN THE END OF THE POLICY PERIOD, IN ACCORDANCE WITH AN APPLICABLE EXTENSION PERIOD, OR 60 DAYS AFTER THE POLICY PERIOD EXPIRATION DATE IN THE CASE OF A CLAIM FIRST MADE DURING THE LAST 60 DAYS OF THE POLICY PERIOD. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE APPLICABLE LIMITS OF LIABILITY AND ARE SUBJECT TO THE APPLICABLE RETENTIONS. THE UNDERWRITERS HAVE NO OBLIGATION TO PAY DEFENSE COSTS OR ANY SETTLEMENTS OR JUDGMENTS ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED. PLEASE READ THIS POLICY CAREFULLY.**

These Declarations along with the completed and signed **Application** and the Policy with endorsements shall constitute the contract between the **Insureds** and Underwriters.

**Underwriters:**   Beazley Insurance Company, Inc.          **Policy Number:**   V17FCF170301

Item 1.   **Named Insured**: Equinox Holdings, Inc.

        Principal Address:

        895 Broadway

        New York, NY 10003

Item 2.   **Policy Period**:   From: 10-Mar-2017          To: 10-Mar-2018

        Both dates at 12:01 a.m. Local Time at the Principal Address stated in Item 1.

Item 3.   **Clauses Forming This Policy**

        Policy Terms and Conditions (F00041 042008 ed.)

        Employment Practices Liability Clause (F00038 042008 ed.)

        Employment Event Clause (F00037 042008 ed.)

        Fiduciary Liability Clause (F00040 042008 ed.)

Item 4.   **Aggregate Limit(s) of Liability**

        Limits of Liability applicable to each clause are shared or separate under this Policy as indicated:

        ☐   Shared

| X | Separate (Other than sublimits as indicated) |
|---|---|
| ☐ | Not Applicable |

| Clause | Aggregate Limit of Liability for the **Policy Period** |
|---|---|
| All Coverages Under This Policy | $15,000,000 |
| Additional Defense Limit | N/A |
| Employment Practices Liability Limit | $10,000,000 |
| Third Party Wrongful Acts Sublimit | $10,000,000 |
| Employment Event Sublimit | $50,000 |
| Fiduciary Liability Clause Limit | $5,000,000 |

**Item 5.**    **Retention(s)**

| Clause | Retention each **Claim**: |
|---|---|
| Employment Practices Liability Retention | $150,000 |
| Third Party Wrongful Acts Retention | $150,000 |
| Fiduciary Liability Retention | $0 |

**Item 6.**    **Premium:**    ███████

**Item 7.**    **Optional Extension Period**

a.   Premium for **Optional Extension Period:**    95% of the total annual premium for the Policy

b.   Length of **Optional Extension Period:**    12 Months

**Item 8.**    **Notification Under This Policy**

a.   Notification pursuant to Clause IX. shall be given to:

Beazley Insurance Company, Inc.
30 Batterson Park Road
Farmington, CT 06032
Attn: Claims
Or by email: claims@beazley.com

b.   All other notices under this Policy shall be given to:

Beazley Insurance Company, Inc.
30 Batterson Park Road
Farmington, CT 06032
Tel: (860) 677-3700
Fax: (860) 679-0247
Attn: Claims
Or by email: claims@beazley.com

**Item 9.**    **Pending or Prior Litigation Date(s)**

| Clause | Date |
|---|---|
| Employment Practices Liability Clause | 10-Feb-2006 |
| Third Party Wrongful Acts | 10-Feb-2006 |

Fiduciary Liability Clause                                                          10-Feb-2006

Item 10.   **Terrorism Coverage:**

Coverage Purchased: ☒ Yes   ☐ No

If "Yes", Terrorism Coverage Premium: ▉

Item 11.   **Endorsements Effective at Inception**

| | | |
|---|---|---|
| 1. | A00529NYFTZ 122010 ed. | New York Free Trade Zone Amendatory Endorsement to Employment Practices Liability Clause |
| 2. | A00999NYFTZ 052013 ed. | New York Free Trade Zone Amendatory Endorsement To Fiduciary Liability Clause |
| 3. | A00531NYFTZ 122010 ed. | New York Free Trade Zone Amendatory Endorsement to Policy Terms and Conditions |
| 4. | A00530NYFTZ 122010 ed. | New York Required Addendum To Declarations Page and Application |
| 5. | E06919 032015 ed. | Policyholder Disclosure Notice of Terrorism Insurance Coverage |
| 6. | E02804ANY 112011 ed. | Sanction Limitation and Exclusion Clause - New York |
| 7. | E00946 012009 ed. | Amend Acquisition Threshold |
| 8. | E01596 122009 ed. | Amend Definition of Application |
| 9. | E07072 052015 ed. | Amend Definition of Discrimination |
| 10. | E00750 092008 ed. | Amend Definition of Employee to Include Future Employees |
| 11. | EEH014NYFTZ 042015 ed. | Amend Definition of Independent Contractor |
| 12. | E01607 122009 ed. | Amend Harassment To Include Bullying |
| 13. | E01961 102011 ed. | Amend Notice Of Claim To Include E-mail |
| 14. | E05546 022014 ed. | Amend Notice of Control Group |
| 15. | E00976 012009 ed. | Amend Other Insurance - Valid And Collectible |
| 16. | E00952 012009 ed. | Amend Sublimit for Voluntary Compliance Fees and Defense Costs |
| 17. | E00694 082008 ed. | Amend Subsidiary Endorsement |
| 18. | E01617 122009 ed. | Amend Third Party Wrongful Act |
| 19. | E01445 092009 ed. | HIPAA Endorsement |
| 20. | E05495 022014 ed. | Investment Loss |
| 21. | E01321 112009 ed. | Leaders Preferred Endorsement Employment Practices Liability Clause |
| 22. | E00812 102008 ed. | Optional Extension Period Options |
| 23. | E04714 052013 ed. | Patient Protection and Affordable Care Act |
| 24. | E00903 012009 ed. | Pre-Approved Choice Of Counsel Endorsement |
| 25. | E00903 012009 ed. | Pre-Approved Choice Of Counsel Endorsement |
| 26. | E02496 012011 ed. | Pro Rata Cancellation For Any Reason |
| 27. | E00849 122008 ed. | Retaliation Carveback To NLRA Exclusion |
| 28. | E00978 012009 ed. | Separate Pending And Prior Litigation Date For Excess Limit Of Liability Under Scheduled Clause |
| 29. | E00691 082008 ed. | Separate Retention For Class or Mass Action Claims |
| 30. | E05121 112013 ed. | Settlor Endorsement |
| 31. | E06786 022015 ed. | Common Claim Tie-In Limits Endorsement |

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

Authorized Representative

Date   10-Apr-2017

Secretary

President



> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Beazley One Management Liability Insurance Policy**
**POLICY TERMS AND CONDITIONS**

In consideration of the payment of the premium, in reliance on all statements made in the **Application**, and subject to all of the provisions of this Policy, Underwriters and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

## I.   DEFINITIONS

The following terms whenever used in this Clause in boldface type shall have the meanings indicated. Terms not defined below, but appearing in boldface type shall have the meanings indicated in the applicable Clause.

A.   **"Change of Control"** means:

1.   the acquisition by any person or entity of more than 50% of the outstanding securities or equity interest of the **Named Insured** representing the present right to vote for the election of directors or **Managers**; or

2.   the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity.

B.   **"Financial Impairment"** means the appointment by any state or federal official, agency or court of any receiver, trustee, examiner, conservator, liquidator, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Insured Organization.**

C.   **"Insured Organization"** means the **Named Insured** and its **Subsidiaries**, including any such organization as a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law.

D.   **"Interrelated Wrongful Acts"** means any and all **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

E.   **"Managers"** means all persons who were, now are, or shall be managers, managing members, members of the board of managers, managing partners, general partners of a limited partnership (including the board of directors of any such general partner that is a corporation) or equivalent executives of any **Insured Organization**.

F.  **"Named Insured"** means the entity designated in Item 1. of the Declarations.

G.  "**Optional Extension Period**" means the period described in Clause XI. of the Policy Terms and Conditions.

H.  **"Policy Period"** means the period from the effective date and hour of this Policy to the Policy expiration date and hour as set forth in Item 2. of the Declarations, or its earlier termination, if any.

I.  **"Pollutants"** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipality or locality counterpart thereof.  Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, mold, spores, fungi, germs, chemicals or waste materials.  **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil product, infectious or medical waste, asbestos or asbestos product, lead or lead product, noise, and electric, magnetic or electromagnetic field.

J.  **"Subsidiary"** means:

1.  any entity, while more than 50% of the outstanding voting securities representing the present right to vote for the election of such entity's directors are owned by the **Named Insured** directly or indirectly;

2.  any limited liability corporation while the right to elect or otherwise appoint or designate more than 50% of such limited liability corporation's **Managers** is owned or controlled by the **Named Insured** directly or indirectly; or

3.  any joint venture, which is a corporate entity, while the **Named Insured** has managerial control, or while the right to elect or otherwise appoint more than 50% of such entity's directors, trustees or other equivalent executive is owned or controlled by the **Named Insured** directly or indirectly

if such entity or corporation was so owned or controlled as of or prior to the inception date of this Policy.

## II.   EXCLUSIONS

The Underwriters shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim**:

A.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1.  any demand, suit, or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the applicable Pending or Prior Litigation Date set forth in Item 9. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation

        underlying or alleged therein;

    2.    any **Wrongful Act** or any fact, circumstance, transaction or situation which has been the subject of any notice of a **Claim** or notice of a potential **Claim** given prior to the **Policy Period** under any other policy;

    3.    any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**; or

B.    against any of the **Insured Persons** of any **Subsidiary** or against any **Subsidiary** subsequent to the date such entity ceased to be a **Subsidiary** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

    1.    any **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or subsequent to the date such entity ceased to be a **Subsidiary**; or

    2.    any **Wrongful Act** occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**.

## III.    LIMITS OF LIABILITY

A.    Aggregate Limit(s) of Liability

The amount(s) shown in Item 4. of the Declarations shall be the Underwriters' maximum aggregate limit(s) of liability under the Policy.

B.    Additional Defense Limit of Liability

If purchased as indicated in Item 4. of the Declarations, the applicable amount shown in Item 4. shall be the Additional Defense Limit of Underwriters applicable only to **Defense Costs** which Limit shall be separate and in addition to any other limit shown in Item 4. of the Declarations. Payment of **Defense Costs** shall erode the Additional Defense Limit first and will not erode any other limit shown in Item 4. until the Additional Defense Limit is exhausted.

C.    If any **Claim** against the **Insureds** gives rise to an obligation both under this Policy and any other coverage, line slip or policy of insurance issued by Underwriters or any of its affiliates to any **Outside Entity**, Underwriters' maximum aggregate limit of liability under all such coverage, line slips or policies for all **Loss** from such **Claim** shall not exceed the greater of:

    1.    the applicable maximum aggregate limit(s) of liability of this Policy; or

    2.    the maximum aggregate limit of liability under any such other coverage, line slip or policy.

D.    The payment of **Defense Costs** by Underwriters reduces and may totally exhaust the applicable Limit(s) of Liability.

E.    More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times:

1.    the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

2.    the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause IX.B.

F.    If all aggregate limit(s) of liability are exhausted, Underwriters' obligations under this Policy shall be completely fulfilled and extinguished.

## IV.    RETENTIONS

A.    Underwriters shall be liable for only that part of **Loss** arising from a **Claim** which is excess of the applicable Retention set forth in Item 5. of the Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.  Any payments made to satisfy the retention or deductible under another policy of insurance shall not satisfy or apply towards the applicable Retention, or any portion thereof, under this Policy.  The Retention shall not apply, however, if indemnification by the **Insured Organization** is not permitted by law or if the **Insured Organization** is not able to indemnify solely by reason of its **Financial Impairment**.

B.    In the event more than one of the Insuring Clauses are applicable to a **Claim**, the Retentions set forth in Item 5. of the Declarations shall be applied separately to that part of the **Loss** resulting from such **Claim** covered by each Insuring Clause.  The sum of the Retentions so applied shall constitute the Retention applicable to such **Claim**.  The total Retention as finally determined shall in no event exceed the largest of the Retentions applicable to Insuring Clauses that are applicable to such **Claim.**

## V.    PRESUMPTIVE INDEMNIFICATION

For all purposes under this Policy, the **Insured Organization** is presumed to indemnify the **Insured Persons** to the fullest extent permitted by law or pursuant to the by-laws or other organizational documents of the **Insured Organization** for any **Loss**, or to advance any **Defense Costs** on their behalf, except to the extent that the **Insured Organization** cannot in fact do so for reasons of **Financial Impairment**.

## VI.    SETTLEMENT AND DEFENSE

A.    Underwriters shall have the right and duty to defend any **Claim**, including the right to select defense counsel, even if any of the allegations are groundless, false or fraudulent; provided, however, that Underwriters shall not be obligated to defend or to continue to defend any **Claim** after the applicable Limit of Liability set forth in Item 4. of the Declarations has been exhausted.

B.   The **Insureds** shall cooperate with Underwriters and, upon Underwriters' request, assist in the investigation, settlement and defense of **Claims** and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insureds**, shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

C.   The **Insureds** shall not settle any **Claim**, select any defense counsel, incur any **Defense Costs**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without Underwriters' prior written consent, which shall not be unreasonably withheld.  Underwriters shall not be liable for any settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated as a result of a **Claim** for a **Wrongful Act**. Notwithstanding the foregoing, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding such Retention, including **Defense Costs**, then Underwriters' consent shall not be required for such disposition.

D.   Underwriters may, with the consent of the **Insureds**, settle or compromise any **Claim** as they deem expedient.  If the **Insureds** withhold consent to a settlement or compromise acceptable to the claimant and Underwriters, then Underwriters' liability for such **Claim** shall not exceed:

1.   the amount for which the **Claim** could have settled or compromised and the **Defense Costs** incurred as of the date such settlement or compromise was proposed to the **Insureds**; plus

2.   70% of any **Loss** incurred after the date such settlement or compromise was proposed to the **Insureds**, with the remaining 30% of such **Loss** to be borne by the **Insureds** at their own risk and uninsured or the applicable limit of liability whichever is less.

## VII.   ALLOCATION

If both **Loss** covered by this Policy and non-covered loss are incurred, either because the **Claim** made against the **Insured** includes both covered and non-covered matters, or because a **Claim** is made against both the **Insured** and others not insured under this Policy, then such covered **Loss** and non-covered loss shall be allocated as follows:

a.   one hundred percent (100%) of **Defense Costs** shall be allocated to covered **Loss**;

b.   Settlements, judgments, verdicts and awards shall be allocated between covered **Loss** and non-covered loss based upon the relative legal and financial exposures of, and the relative benefits obtained in connection with the resolution of the **Claim** as between the **Insureds'** or non-Insureds' exposure to non-covered loss, and the **Insureds'** exposure to covered **Loss**.  In making such allocation determination, the **Insureds** and Underwriters agree to use their best efforts to determine a fair and proper allocation.  In the event that an allocation cannot be agreed to, then Underwriters shall make an interim payment of the amount of **Loss** that the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of applicable law.

**VIII.    SPOUSAL AND DOMESTIC PARTNER EXTENSION**

Coverage under this Policy will apply to an **Insured Person's** lawful spouse, including any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law in the United States, but solely by reason of such spousal status or such spouse's ownership interest in property or assets that are sought as recovery for **Wrongful Acts**.

**IX.    NOTIFICATION**

A.    In the event any **Executive Officer** becomes aware that a **Claim** has been made against any of the **Insureds**, the **Insureds** shall, as a condition precedent to their rights to payment under this Policy, give to Underwriters notice in writing of such **Claim** as soon as practicable provided all **Claims** must be reported no later than the end of the **Policy Period**, in accordance the requirements of the **Optional Extension Period** (if applicable), or sixty (60) days after the expiration date of the **Policy Period** in the case of **Claims** first made against the **Insured** during the last sixty (60) days of the **Policy Period**.

B.    If during the **Policy Period**, except for the **Optional Extension Period**, the **Insureds** first become aware of a specific **Wrongful Act** and if the **Insureds** during the **Policy Period**, except for the **Optional Extension Period**, give written notice to Underwriters as soon as practicable of:

1.    the specific **Wrongful Act**;

2.    the consequences which have resulted or may result therefrom; and

3.    the circumstances by which the **Insureds** first became aware thereof,

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.

Underwriters shall have no obligation to cover any amounts, including any legal fees or expenses, incurred prior to the time such circumstances result in a **Claim**.

C.    Notice to Underwriters provided for in Clause IX.A. and B. shall be given to the firm shown in Item 8.(a) of the Declarations.  All other notices to Underwriters under this Policy shall be given to the firm shown in Item 8.(b) of the Declarations.  All notices under any provision of this Policy must be made in writing.  Notices given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee.

**X.    GENERAL CONDITIONS**

A.    Representations.

By acceptance of this Policy, the **Insureds** agree:

1.    that the statements in the **Application** are their representations, and that this Policy is issued in reliance upon the truth of such representations;

2.  that in the event that the **Application** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall not afford any coverage with respect to those **Insureds** who made or had knowledge of such misrepresentations; and

3.  that this Policy shall not afford any coverage for amounts paid by the **Insured Organization** as indemnification of any of the **Insureds** who made or had knowledge of the misrepresentations set forth in Clause X.A.2.;

None of the foregoing provisions in Clause X.A. shall in any other way limit or void Underwriters' rights to rescind this Policy; provided, that the Underwriters shall not rescind this Policy where coverage is being provided to an **Insured Person** where indemnification by the **Insured Organization** is not permitted by law or the **Insured Organization** is not able to indemnify solely by reason of its **Financial Impairment**.

B.  Run-Off

1.  In the event any entity ceases to be a **Subsidiary** as defined herein after the inception date of this Policy, or of any policy issued by Underwriters of which this Policy is a renewal or replacement, this Policy, subject to its terms including without limitation Exclusion B. above, shall continue to apply to any of the **Insured Persons** who were covered under this Policy because of their service with such entity and to such **Subsidiary**.

2.  In the event of a **Change of Control** after the inception date of this Policy or of any policy issued by Underwriters of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to the **Insureds** but only with respect to any **Wrongful Act** committed or allegedly committed prior to the **Change of Control.**

C.  Cancellation/Nonrenewal

1.  By acceptance of this Policy, the **Insureds** hereby confer the exclusive power and authority to cancel this Policy on their behalf to the **Named Insured**.  Such entity may cancel this Policy by surrender thereof to Underwriters, or by mailing to Underwriters written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice shall be equivalent to mailing.

2.  Underwriters may cancel this Policy only for nonpayment of premium by mailing to the **Named Insured** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice by Underwriters shall be equivalent to mailing.

3.   If this Policy is cancelled pursuant to 1. hereinabove, Underwriters shall retain the customary short rate proportion of the premium hereon.  If this Policy is cancelled pursuant to 2. hereinabove, Underwriters shall retain the pro rata proportion of the premium hereon.  Payment or tender of any unearned premium by Underwriters shall not be a condition precedent to the effectiveness of cancellation.

4.   Underwriters may nonrenew this Policy by mailing to the **Named Insured** written notice of nonrenewal not less than sixty (60) days before the end of the **Policy Period**.  The mailing of such notice shall be sufficient notice.  Delivery of such written notice by Underwriters shall be equivalent to mailing.

D.   Other Insurance

This Policy shall apply in excess of any other existing valid policy including any self Insured retention or deductible portion thereof, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any **Loss** in connection with such **Claim** is collectible or recoverable under such other policy, unless such other policy is written only as specific excess insurance over the Limits of Liability of this Policy.

## XI.   OPTIONAL EXTENSION PERIOD

A.   If this Policy is cancelled by the **Named Insured** or if Underwriters nonrenew this Policy, then the **Named Insured** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 7.a. of the Declarations of the total annual premium for this Policy, to an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of time set forth in Item 7.b. of the Declarations after the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the effective date of cancellation or nonrenewal.

B.   As a condition precedent to the right to purchase the **Optional Extension Period**, the total premium for this Policy must have been paid.  The right to purchase the **Optional Extension Period** shall terminate unless written notice together with full payment of the premium for the **Optional Extension Period** is given to Underwriters within thirty (30) days after the effective date of cancellation or nonrenewal.  If such notice and premium payment is not so given to Underwriters, there shall be no right to purchase the **Optional Extension Period**.

C.   In the event of the purchase of the **Optional Extension Period**, the entire premium for the **Optional Extension Period** shall be deemed earned at its commencement.

D.   The exercise of the **Optional Extension Period** shall not in any way increase the Limit(s) of Liability of Underwriters.

E.   The offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this Clause XI.

## XII.   ASSISTANCE, COOPERATION AND SUBROGATION

The **Insureds** agree to provide Underwriters with such information, assistance and cooperation as Underwriters or their counsel may reasonably request, and they further agree that they shall not take

any action which in any way increases Underwriters' exposure under this Policy.

In the event of any payment under this Policy, Underwriters shall be subrogated to the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents as are necessary to enable Underwriters effectively to bring suit in their name, and shall provide all other assistance and cooperation which Underwriters may reasonably require.

## XIII.   ACTION AGAINST UNDERWRITERS

No action shall lie against Underwriters unless, as a condition precedent thereto, the **Insureds** shall have fully complied with all of the terms of this Policy, and the amount of the **Insureds'** obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and Underwriters. Nothing contained herein shall give any person or organization any right to join Underwriters as a party to any **Claim** against the **Insureds** to determine their liability, nor shall Underwriters be impleaded by the **Insureds** or their legal representative in any **Claim**.

## XIV.   ENTIRE AGREEMENT

By acceptance of this Policy, the **Insureds** agree that this Policy embodies all agreements existing between them and Underwriters or any of their agents relating to this insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of Underwriters shall not effect a waiver or a change in any part of this Policy or estop Underwriters from asserting any right under the terms of this Policy, nor shall the terms be waived or changed except by written endorsement or rider issued by Underwriters to form a part of this Policy.

## XV.   TERRITORY

This Policy shall apply to **Claims** made against the **Insureds** anywhere in the world.

## XVI.   VALUATION AND CURRENCY

All premiums, limits, Retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of **Loss** is due.

## XVII.   BANKRUPTCY

Bankruptcy or insolvency of the **Insureds** shall not relieve Underwriters of their obligations nor deprive Underwriters of their rights or defenses under this Policy.

## XVIII.   AUTHORIZATION

By acceptance of this Policy, the **Named Insured** agrees to act on behalf of the **Insureds** with respect

to the giving and receiving of any notice provided for in this Policy, the payment of premiums and the receipt of any return premiums that may become due under this Policy, and the agreement to and acceptance of endorsements, and the **Insureds** agree that the **Named Insured** shall act on their behalf.

**XIX.   HEADINGS**

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.



---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

**Beazley One Management Liability Insurance Policy
EMPLOYMENT PRACTICES LIABILITY CLAUSE**

**I.  INSURING CLAUSES**

A.  Underwriters shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** first made against any **Insured** and reported in writing to the Underwriters during the **Policy Period** or **Optional Extension Period**, if applicable, for a **Wrongful Act**.

B.  Underwriters shall pay on behalf of the **Insured Persons** all **Loss** resulting from any **Claim** first made against the **Insured Persons** and reported in writing to the Underwriters during the **Policy Period** or **Optional Extension Period**, if applicable, for a **Wrongful Act** committed while serving in an **Outside Executive Position**.

The coverage afforded by this Insuring Clause shall be specifically excess of any indemnification and insurance available to such **Insured Persons** from the **Outside Entity.**

C.  If indicated in Item 3. of the Declarations, Underwriters shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** first made against any of the **Insureds** and reported in writing to the Underwriters during the **Policy Period** or **Optional Extension Period**, if applicable, for a **Third Party Wrongful Act**.

If a sublimit applicable to **Third Party Wrongful Acts** is indicated in Item 4. of the Declarations, then such amount shall be part of and not in addition to the aggregate limit of liability applicable to the Employment Practices Liability Clause.

**II.  DEFINITIONS**

The following terms whenever used in this Clause in boldface type shall have the meanings indicated. Terms not defined below, but appearing in boldface type shall have the meanings indicated in the Policy Terms and Conditions.

A.  **"Application"** means all applications, including all attachments and other materials submitted therewith or incorporated therein, and any other documents or information submitted in connection with the underwriting of this Policy, including any endorsement or other part thereof, or any other employment practices liability policies issued by the Underwriter of which this Policy is a renewal, replacement or which it succeeds in time.

B.  **"Claim"** means:

1.  a written demand or request for monetary damages or non-monetary relief against any

of the **Insureds**, or to toll or waive a statute of limitations;

2.  a civil, criminal, administrative, investigative or regulatory proceeding initiated against any of the **Insureds**, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by:

    a.  the service of a complaint or similar pleading;

    b.  the filing of a notice of charges, investigative order or similar document;

    c.  written notice or subpoena from an investigatory authority identifying such **Insured** as an entity or person against whom a formal proceeding may be commenced;

3.  in the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause; or

4.  an arbitration or mediation or other alternative dispute resolution proceeding if the **Insured Organization** is obligated to participate in such proceeding or if the **Insured Organization** agrees to participate in such proceeding with Underwriters' prior written consent, such consent not to be unreasonably withheld.

However, **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

C.  **"Defense Costs"** means reasonable and necessary legal fees and expenses to which Underwriters consent in advance and which are incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of appeal, supersedeas, injunction, attachment or similar bonds (provided, however, Underwriters shall have no obligation to apply for or furnish any bond for appeal, supersedeas, injunction, attachment or any similar purpose), but shall not include salaries, regular or overtime wages, fees or benefit expenses associated with **Employees** or the **Insured Organization's** overhead expenses.

D.  **"Discrimination"** means any actual or alleged termination of the employment relationship, demotion, failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis which is or is alleged to be prohibited by federal, state or local law.

E.  **"Employee"** means all persons whose labor or service is currently or has formerly been engaged by and directed by the **Insured Organization**. This includes applicants for employment, employees, volunteers, part time, seasonal, leased and temporary employees as well as any individual employed in a supervisory or managerial position and **Independent Contractors** but does not include employees who are leased to another employer.

F.  **"Executive Officer"** means any member of the management committee, chairperson, chief executive officer, chief operating officer, president, **Manager**, chief financial officer, risk manager, human resources staff or an individual acting in a similar capacity with the **Insured Organization**.

G.   "**Harassment**" means actual or alleged unwelcome sexual advances, requests for sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature, where such harassment is based on an employee's race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis protected by federal, state or local law and is explicitly or implicitly made a condition of employment, used as a basis for employment decisions or performance, or creates a hostile, intimidating or offensive work environment or that interferes with performance.

H.   "**Inappropriate Employment Conduct**" means any of the following:

1.   actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful;

2.   actual or alleged wrongful demotion, evaluation, deprivation of a career opportunity, or discipline;

3.   actual or alleged negligent hiring, retention or supervision;

4.   actual or alleged breach of an express written employment agreement;

5.   actual or alleged violation of the Family and Medical Leave Act;

6.   actual or alleged misrepresentation, false imprisonment, detention or malicious prosecution in connection with an employment decision;

7.   actual or alleged libel, slander, defamation of character or any invasion of right of

privacy in connection with an employment decision; or

8.   actual or alleged failure to employ or promote, train, create or enforce adequate workplace or employment policies and procedures, or grant tenure or seniority.

I.   "**Independent Contractor**" means any natural person independent contractor who performs labor or service for the **Insured Organization** on a full-time basis pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Insured Organization**.  The status of an individual as an **Independent Contractor** shall be determined as of the date of an alleged **Wrongful Act**.

J.   "**Insureds**" means the **Insured Persons** and the **Insured Organization**.

K.   "**Insured Person**" means any person who was, now is, or shall be an **Employee** or duly elected or appointed directors, officers, trustees or **Managers** of the **Insured Organization** including all persons outside the United States serving in a functionally equivalent role for the **Insured Organization** including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

L.   "**Loss**" means money which an **Insured** is legally obligated to pay as a result of a **Claim** including compensatory damages, judgments (including prejudgment and post judgment interest awarded against an **Insured** on that part of any judgment paid by Underwriters), back pay, front pay, settlements, statutory attorney fees, **Defense Costs** and punitive, exemplary

and multiple damages where insurable by law in the applicable jurisdiction most favoring coverage for punitive, exemplary or multiple damages.  However, **Loss** shall not include any of the following:

1.    the cost of providing non-monetary relief (this provision does not apply to **Defense Costs** where non-monetary relief is sought);

2.    civil or criminal fines (other than civil fines imposed under the Health Insurance Portability and Accountability Act), penalties, sanctions, liquidated damages (other than those awarded under the Age Discrimination in Employment Act or the Equal Pay Act); payroll or other taxes or other matters that may be deemed uninsurable according to the law under which this policy is construed;

3.    amounts owed under **Wage and Hour Laws**;

4.    severance pay, commissions, bonuses, profit sharing or benefits including but not limited to medical, stock options, vacation, holiday, and/or sick pay;

5.    future salary, wages, bonus, commissions and/or benefits resulting from a settlement

of a **Claim**, judgment, order or award that results in the rehiring, promotion or reinstatement of an **Insured Person**;

6.    awards, costs, judgments, or orders resulting from contempt of court or violation of a court order or administrative decree; or

7.    any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend.

M.    **"Outside Entity"** means:

1.    any non-profit corporation, community chest, fund or foundation that is not included in the definition of the **Insured Organization** and that is exempt from federal income tax; or

2.    any other entity, if specified in an endorsement to this Policy.

N.    **"Outside Executive Position"** means the position of director, officer, trustee or other equivalent executive position held by any of the **Insured Person** in an **Outside Entity** if service in such position is at the specific request of the **Insured Organization.**

O.    "**Retaliation**" means any actual or alleged **Discrimination**, **Harassment**, and/or

**Inappropriate Employment Conduct** against an **Employee** on account of such **Employee's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the **Employee** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

P.    **"Third Party Wrongful Act"** means any actual or alleged discrimination, including discriminatory or sexual harassment, by any of the **Insureds** against any natural person who is not an **Insured Person** or an applicant for employment of the **Insured Organization**.

Q.  "**Wage and Hour Law**" means any federal, state or local law governing or relating to the payment of wages including the payment of overtime, on-call time, rest periods, minimum wages or the classification of employees for the purpose of determining employees' eligibility for compensation or other benefits under such law(s) including any statutory or common law premised on such law.

R.  "**Wrongful Act**" means **Inappropriate Employment Conduct**, **Discrimination**, **Harassment**, and/or **Retaliation** by any of the **Insureds** against an **Insured Person** or an applicant for employment of the **Insured Organization**.  If indicated in Item 3. of the Declarations, **Wrongful Act** shall also include a **Third Party Wrongful Act**.

## III.  EXCLUSIONS

The Underwriters shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim**:

A.  for actual or alleged bodily injury, sickness, disease, death, assault, battery, mental anguish, emotional distress, invasion of privacy, or damage to or destruction of tangible property (including loss of use thereof); provided, however, this exclusion shall not apply to that portion of a **Claim** for a **Wrongful Act** seeking **Loss** for mental anguish, emotional distress or humiliation;

B.  for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by any law concerning workers' compensation, disability benefits, unemployment compensation law, social security or other employment benefits law, the Fair Labor Standards Act (except the Equal Pay Act), the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, including any similar federal, state or local law, regulations promulgated thereunder, or any amendments thereto, or any other law based on the same violations; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**;

C.  for actual or alleged violation(s) of the Employee Retirement Income Security Act of 1974 ("ERISA"), or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Insured Person** or dependent in, any employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA; provided, however, this exclusion shall not apply to a **Claim** for **Retaliation**;

D.  against any of the **Insured Persons** serving in an **Outside Executive Position**:

1.  based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** occurring prior to the date such **Insured Person** began serving in an **Outside Executive Position** if any of the **Insured Persons**, as of such date, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this Policy; or

2.  by, on behalf of, or for the benefit of the **Outside Entity**, or one or more of the **Outside Entity's** directors, officers, trustees or equivalent executives;

E.      based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving lockout, strike, picket line, hiring of replacement workers or other similar action in connection with any labor dispute or labor negotiation or for or arising out of any alleged violation or responsibilities, duties or obligations imposed on an **Insured** under the National Labor Relations Act or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation;

F.      based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving the liability of others assumed by an **Insured** under any contract or agreement, oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement;

G.      for breach of an express written employment agreement, or under any policy or procedure providing for payment in the event of separation from employment unless such liability would have attached in the absence of such contract or agreement; provided, that this Exclusion shall not apply to **Defense Costs** incurred in connection with such **Claim**; or

H.      for an alleged violation of the responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided, however, that in the event such **Claim** also alleges a **Wrongful Act** otherwise covered by this Policy and notwithstanding the provisions of Clause VI. **Settlement and Defense** of the Policy Terms and Conditions and subject to all other terms, conditions and exclusions contained in this Policy, this exclusion does not apply to **Loss** solely applicable to that portion of the **Claim** alleging such **Wrongful Act**.

## IV.      ALLOCATION

Notwithstanding Clause VII. **Allocation** of the Policy Terms and Conditions Clause, the **Insureds** and Underwriters agree to use their best efforts to determine a fair and proper allocation of all covered **Defense Costs** and non-covered defense costs associated with the defense of **Claims** alleging a violation of the responsibilities, duties, or obligations imposed under any **Wage and Hour Law**. In the event that an allocation cannot be agreed to, then Underwriters shall make an interim payment of the amount of **Defense Costs** that the parties agree is not in dispute until a final amount is agreed upon or determined by applicable law.

## V.      ADJUSTMENT

This Policy is issued and the premium computed on the basis of the information submitted to Underwriters as part of the **Application**.  In the event the **Named Insured**, after the inception date of this Policy:

a.      merges with another entity such that the **Named Insured** is the surviving entity, or

b.      acquires assets of another entity or creates or acquires a **Subsidiary** whose employees exceed 25% of the total number of employees of the **Insured Organization** at the time of acquisition,

coverage shall be afforded for a period of ninety (90) days for any **Loss** in any way involving the assets acquired or the assets, liabilities, directors, officers or employees of the entity acquired or merged with, or such **Subsidiary**.  Coverage beyond such ninety (90) day period shall only be available if written notice of such transaction or event is given to Underwriters by the **Named Insured**; the **Named**

**Insured** provides Underwriters with such information in connection therewith as Underwriters may deem necessary; the **Insureds** accept any special terms, conditions, exclusions or additional premium charge as may be required by Underwriters; and Underwriters, at their sole discretion, agree to provide such coverage.


**VI.     OTHER INSURANCE**

Notwithstanding Clause X.D. **Other Insurance** of the GeneralTerms and Conditions, solely in respect of **Claims** for **Wrongful Acts** other than a **Third Party Wrongful Acts**, this Policy shall apply as primary insurance, except with respect to:

a.      **Claims** which include allegations covered under both a fiduciary liability policy and this Policy; or

b.      **Claims** brought by or on behalf of an **Independent Contractor** or leased or temporary **Employee**

in which case the provisions of Clause X.D. **Other Insurance** of the Common Terms and Conditions shall apply.



---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

**Beazley One Management Liability Insurance Policy**
**EMPLOYMENT EVENT CLAUSE**

**I.      INSURING CLAUSE**

The Underwriters shall pay **Employment Event Loss** incurred by the **Insured Organization** solely with respect to an **Employment Event** first occurring during the **Policy Period** or **Optional Extension Period**, if purchased, and reported in writing to the Underwriters as soon as practicable but in no event later than sixty (60) days after the expiration of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased, from first dollar, provided, that the payment of **Employment Event Loss** shall not waive the Underwriters' rights under this Policy or at law.  Coverage under this Clause I. shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Employment Event** and, in the case where a **Claim** is made, regardless of whether the **Employment Event Loss** is incurred prior to or subsequent to the making of the **Claim**.

An **Employment Event** commences when the **Insured Organization** or any **Executive Officer** shall first become aware of such **Employment Event**.  An **Employment Event** shall conclude ninety (90) days after it first commences or when the **Employment Event** Sublimit has been exhausted.

**II.     DEFINITIONS**

The following terms whenever used in this Clause in boldface type shall have the meanings indicated. Terms not defined below, but appearing in boldface type shall have the meanings indicated in the applicable Clause.

A.      "**Employment Advisor**" means any public relations firm, security firm or mental health professional selected by the **Insured** with the Underwriters' consent, such consent not to be unreasonably withheld.

B.      "**Employment Event**" means any of the following events, which shall be deemed to commence (i) when an **Executive Officer** first believes in good faith that it is more likely than not that such event will occur within the next sixty (60) days, or (ii) with respect to 5. below, when the event occurs, whichever is earlier:

1.      layoff/termination of 20% or greater of the **Insured Organization's** workforce;

2.      acquisition of an organization which necessitates a material change in employment status or terms of employment of 20% or greater of the **Insured Organization** workforce;

F00037
042008 ed.
Class Code: 2-14057                                                                    Page 1 of 2

49

3.      the public announcement of allegations of discrimination or harassment implicating an **Executive Officer**; or a **Claim** alleging a **Third Party Wrongful Act**;

4.      receipt by the **Insured Organization** of notice that a civil rights organization, public interest group or similar organization is investigating the **Insured Organization** for violations of state or federal employment laws or is distributing literature which accuses the **Insured Organization** of violations of state or federal employment laws;

5.      a workplace disaster resulting in loss of life or the imminent threat of or actual use of a lethal weapon which occurs on the **Insured Organization's** premises, including without limitation, flood, fire, or workplace violence.

C.      "**Employment Event Loss**" means reasonable fees and expenses charged by an **Employment Advisor** in connection with:

1.      advising the **Insured Organization** with respect to minimizing potential loss or liability on account of an **Employment Event**;

2.      retaining an independent security consultant or for independent security guard services with respect to an **Employment Event** described in Definition B.1., 2. or 5.;

3.      managing or administering disclosures to clients, customers, suppliers, investors or the public regarding an **Employment Event**; or

4.      providing counseling to any **Employee** on account of an **Employment Event**

provided, that **Employment Event Loss** shall not include salaries, regular or overtime wages, fees or benefit expenses associated with **Employees** or the **Insured Organization's** overhead expenses.

## III.    EMPLOYMENT EVENT SUBLIMIT

The Employment Event Sublimit shown in Item 4. of the Declarations shall be the maximum aggregate Limit of Liability of the Underwriters for all **Employment Event Loss** resulting from all **Employment Events** which amount shall be part of, and not in addition to, the Employment Practices Liability Clause Limit of Liability shown in Item 4. of the Declarations.



> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Beazley One Management Liability Insurance Policy**
**FIDUCIARY LIABILITY CLAUSE**

**I.     INSURING CLAUSES**

    A.    The Underwriters shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** first made against any **Insured** and reported in writing to the Underwriters during the **Policy Period** or **Optional Extension Period**, if applicable, for a **Wrongful Act**.

    B.    The Underwriters shall pay on behalf of the **Insureds** in an amount not to exceed $100,000 any **Voluntary Compliance Fees** and **Defense Costs** incurred with respect to a **Voluntary Compliance Notice**.  Such amount shall be subject to the Retention set forth in Item 5. of the Declarations and shall be part of and not in addition to the Limit of Liability set forth in Item 4. of the Declarations.  This Insuring Clause shall not apply to any **Voluntary Compliance Fees** and **Defense Costs** incurred with respect to any **Insured's** participation in any **Voluntary Compliance Program** initiated prior to the Inception Date of this Policy.

**II.     DEFINITIONS**

The following terms whenever used in this Clause in boldface type shall have the meanings indicated. Terms not defined below, but appearing in boldface type shall have the meanings indicated in the Policy Terms and Conditions.

    A.    **"Administration"** means one or more of the following administrative duties or activities with respect to a **Plan**:

        1.    counseling or advising participants or beneficiaries;

        2.    providing interpretations;

        3.    handling of records; or

        4.    affecting enrollment, notification, termination, amendment or cancellation of participants or beneficiaries.

    B.    **"Administrator"** means a natural person with responsibility for **Administration** and any third party which is included in the definition of **Administrator** by written endorsement attached hereto, but only with respect to a **Plan**.

    C.    **"Application"** means all applications, including all attachments and other materials submitted therewith or incorporated therein, and any other documents or information submitted in connection with the underwriting of this Policy including any endorsement or other part thereof, or any other fiduciary liability policy issued by the Underwriters, of which this Policy is a

renewal, replacement or which succeed it in time; and any publicly available documents that are filed by the **Named Insured** or **Plan** prior to the inception date of this Policy with the Internal Revenue Service ("IRS"), Department of Labor or Pension Benefit Guaranty Corporation (or for any similar federal, state, local or foreign regulatory agency).

D.  **"Benefits"** means any obligation under a **Plan** to a participant or beneficiary of a **Plan**.

E.  **"Claim"** means:

1.  a written demand or request for monetary damages or non-monetary relief against any of the **Insureds**, or to toll or waive a statute of limitations;

2.  a civil, criminal, arbitration, administrative, investigative or regulatory proceeding initiated against any of the **Insureds** commenced by:

    a.  the service of a complaint or similar pleading;

    b.  the filing of a notice of charge, investigative order or similar document; or

    c.  written notice or subpoena from an investigatory authority identifying such **Insured** as an entity or person against whom a formal proceeding may be commenced;

3.  any fact-finding investigation by the Department of Labor, the Pension Benefit Guaranty Corporation or similar governmental agency located outside the United States;

4.  solely for the purpose of coverage afforded under Insuring Clause I.B., a **Voluntary Compliance Notice**; or

5.  an arbitration or mediation or other alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding with Underwriters' prior written consent, such consent not to be unreasonably withheld.

F.  **"Defense Costs"** means reasonable and necessary legal fees and expenses to which the Underwriters consent in advance and which are incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of appeal, supersedeas, injunction, attachment or similar bonds (provided, however, the Underwriters shall have no obligation to apply for or furnish any bond for appeal, supersedeas, injunction, attachment or any similar purpose), but shall not include salaries, regular or overtime wages, fees or benefit expenses associated with **Insured Persons** or the **Insured Organization's** overhead expenses.

G.  **"ERISA"** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state, foreign or other jurisdiction to which a **Plan** is subject. **ERISA** shall not include any law concerning worker's compensation, unemployment insurance, social security, government mandated disability benefits or similar law.

H.  **"ESOP"** means any employee stock ownership plan as defined in **ERISA** or any **Plan** under which investments are made primarily in securities of the **Insured Organization.**

I.  "**ESOP Administration**" means one of more of the following administrative duties or activities with respect to an **ESOP**:

1.  giving notice to employees, participants or beneficiaries;

2.  interpreting benefits;

3.  handling records; or

4.  effecting enrollment, termination or cancellation of employees, participants, or beneficiaries

Provided, however, that **ESOP Administration** does not include the giving of advice or counsel with respect to any matter relating to securities issued by the **Insured Organization**.

J.  **"Executive Officer"** means any duly elected officer, director, natural person partner, principal, **Manager**, in-house general counsel or member of the **Insured Organization's** legal department, trustee or **Administrator** or individual acting in a similar capacity with the **Insured Organization**.

K.  **"Fiduciary"** means a fiduciary of a **Plan** as defined in **ERISA**.

L.  **"Insured"** means any **Insured Person**, the **Insured Organization** and any **Plan**.

M.  **"Insured Person"** means all persons who were, now are, or shall be employees of the **Insured Organization** or a **Plan**; or duly elected or appointed directors, officers, trustees or **Managers** of the **Insured Organization** or a **Plan** in his or her capacity as a **Fiduciary** or **Administrator** of a **Plan** including all persons outside the United States of America serving in a functionally equivalent role including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

N.  **"Loss"** means money which an **Insured** is legally obligated to pay as a result of a **Claim**, other than a **Voluntary Compliance Notice**, including damages, judgments (including prejudgment or postjudgment interest awarded against an **Insured** on that part of any judgment paid by the Underwriters), settlements, statutory attorney's fees, **Defense Costs** and punitive, exemplary and multiple damages where insurable by law in the applicable jurisdiction most favoring coverage for punitive, exemplary or multiple damages.  However, **Loss** shall not include:

1.  taxes or the loss of tax benefits, or civil or criminal fines or penalties imposed by law except for:

a.  the five percent (5%) or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA**;

b. the twenty percent (20%) or less civil penalty imposed upon an **Insured** under Section 502(l) of **ERISA**;

c. **Voluntary Compliance Fees**; or

d. penalties or other awards imposed by the Pension Ombudsman of England or Occupational Pensions Regulatory Authority of England pursuant to the English Pension Scheme Act 1993, the English Pensions Act 1995, the UK Pensions Act 2004, as amended, and any rules and regulations promulgated thereunder, provided always that no part of the premium for this Policy attributable to this exception has been funded, paid or reimbursed from the funds or assets of any pension scheme insured under this Policy;

2. **Benefits**, which are or may become due except to the extent that such sums are payable as a personal obligation of a natural person **Insured** because of such natural person **Insured's Wrongful Act**;

3. any amounts for which the **Insureds** are legally or financially absolved from payment;

4. matters deemed uninsurable under the law pursuant to which this Policy shall be construed; or

5. any amounts incurred in defense of any **Claim** for which any other Underwriter has a duty to defend.

O. **"Plan"** means any plan, fund or program, regardless of whether it is subject to regulation under Title I of **ERISA** or any part thereof, or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended, and which is:

1. a welfare plan as defined in **ERISA** sponsored solely by the **Insured Organization** or sponsored jointly by the **Insured Organization** and a labor organization, solely for the benefit of the employees of the **Insured Organization**, and which is so sponsored prior to the inception date of this Policy or becomes so sponsored after the inception date of this Policy pursuant to Clause IV.A.;

2. a pension plan as defined in **ERISA** (subject to 7. below) sponsored solely by the **Insured Organization** or sponsored jointly by the **Insured Organization** and a labor organization, solely for the benefit of the employees of the **Insured Organization**, and which is so sponsored prior to the inception date of this Policy or becomes so sponsored after the inception date of this Policy pursuant to Clause IV.A.;

3. a plan which is both a welfare plan and a pension plan as defined in **ERISA** (subject to 7. below) sponsored solely by the **Insured Organization** or sponsored jointly by the **Insured Organization** and a labor organization solely for the benefit of the employees of the **Insured Organization**, and which is so sponsored prior to the inception date of this Policy or becomes so sponsored after the inception date of this Policy pursuant to Clause IV.A.;

4.     a government-mandated program for unemployment insurance, workers compensation, social security or disability benefits for employees of the **Insured Organization**;

5.     any other plan, fund or program which is included in the definition of **Plan** by written endorsement attached hereto;

6.     any other employee benefit plan that is not subject to Title I of **ERISA**, including any fringe benefit or excess benefit plan, that was, is, or becomes sponsored solely by the **Insured Organization** exclusively for the benefit of employees of the **Insured Organization**; or

7.     an **ESOP** but solely with respect to **ESOP Administration**.  No **ESOP** is included within the definition of **Plan** with respect to **Claims** for any **Wrongful Act** other than **ESOP Administration** unless that **ESOP** is specifically included within the definition of **Plan** by written endorsement attached hereto.

P.     **"Voluntary Compliance Fees"** means any costs of corrections, fees, penalties or sanctions imposed by law under a **Voluntary Compliance Program** that any **Insured** becomes legally obligated to pay as a result of **Wrongful Acts**, but shall not include any other costs, charges, expenses, fees, penalties, sanctions, assessments, damages, taxes or matters that may be deemed to be uninsurable under the law pursuant to which this Policy shall be construed.

Q.     **"Voluntary Compliance Notice"** means a written notice given to the Underwriters indicating an **Insured's** intent to participate in a **Voluntary Compliance Program** during the **Policy Period**.

R.     **"Voluntary Compliance Program"** means any voluntary compliance resolution program or similar voluntary settlement program administered by the Internal Revenue Service or Department of Labor of the United States, including, but not limited to, the Employee Plans Compliance Resolution System, the Self Correction Program, the Audit Closing Agreement Plan, the Delinquent Filer Voluntary Compliance program and the Voluntary Fiduciary Correction program.

S.     **"Wrongful Act"** means:

1.     as respects a **Fiduciary**, a **Plan** or the **Insured Organization**:

a.     any actual or alleged violation of any of the responsibilities, obligations or duties imposed on **Fiduciaries** by **ERISA** in connection with a **Plan**; or

b.     any matter claimed against an **Insured** by reason of his, her or its status as a **Fiduciary** of a **Plan**;

2.     as respects an **Administrator**:

a.     any actual or alleged act, error or omission in the performance of **Administration**; or

      b.      any matter claimed against an **Administrator** by reason of his or her status as such;

     3.      as respects an **Insured Person**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or **Administrator** of any other plan, including a multi-employer plan, but only if such service is at the specific request of the **Insured Organization**; or

     4.      any actual or alleged act, error or omission by an **Insured Person** in the performance of **ESOP Administration**.

## III.   EXCLUSIONS

The Underwriters shall not be liable to make any payment for **Loss** or **Voluntary Compliance Fees** in connection with or resulting from any **Claim**:

A.     for actual or alleged libel, slander, defamation, bodily injury, sickness, disease, death, false arrest, false imprisonment, assault, battery, mental anguish, emotional distress, invasion of privacy, or damage to or destruction of any tangible property (including loss of use thereof);

B.     based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

     1.      the actual, alleged or threatened discharge, release, escape, seepage, migration, dispersal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere, or

     2.      any direction or request that the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so, including, but not limited to, any **Claim** alleging damage to the **Insured Organization** or the **Plan** or any of their security holders, purchasers or sellers

     provided, however, that this exclusion shall not apply to any **Claim** by or on behalf of a beneficiary of or a participant in any **Plan** relating to the diminution in value of any securities issued by an organization other than the **Insured Organization** which are owned by the **Plan**;

C.     based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving discrimination in violation of any law other than **ERISA** or any similar act;

D.     for liability of others assumed by the **Insured** under any contract or agreement, either oral or written, except to the extent that the **Insured** would have been liable in the absence of the contract or agreement or unless the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which the **Plan** was established;

E.     based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any act or omission in his, her or its capacity as a **Fiduciary** or **Administrator** of any plan, fund or program other than a **Plan** as defined in this Policy, or by reason of his, her or its status as a **Fiduciary** or **Administrator** of such other plan, fund or program;

F.     based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any **Wrongful Act** as respects a **Plan** taking place at any time when the **Insured Organization** did not sponsor such **Plan**;

G.     for any actual or alleged violation of responsibilities, duties or obligations imposed on an **Insured** under any law concerning workers' compensation, unemployment insurance, Social Security, or disability insurance, the Worker Adjustment and Retraining Notification Act, the Fair Labor Standards Act, the Occupational Safety and Health Act, the National Labor Relations Act, including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law other than COBRA;

H.     for the failure to collect contributions owed to any **Plan** from any employer unless such failure is due to the negligence of an **Insured**;

I.     for **Benefits**, which are or may become due except to the extent that such sums are payable as a personal obligation of an **Insured Person**; provided, however this exclusion shall not apply to **Defense Costs**; or

J.     based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

    1.     any deliberately dishonest, fraudulent or criminal act, or omission by any of the **Insureds**; or

    2.     any personal profit or advantage gained by any of the **Insured Persons** to which they were not legally entitled

as determined by a judgment, settlement or a final adjudication; provided, however, this exclusion shall not apply to **Defense Costs** incurred up until such determination is made.

No **Wrongful Act** shall be imputed to any of the other **Insureds** for the purpose of determining the applicability of any of the Exclusions.

## IV.   ACQUISITIONS

A.     **Sponsorship of Another Plan**

In the event the **Insured Organization** becomes a sponsor of a plan, other than an **ESOP**, after the inception date of this Policy, whether by acquisition of a **Subsidiary** or another entity, merger with another entity where the **Insured Organization** is the surviving entity or by its own creation, and the total assets of such newly sponsored plan do not exceed twenty-five percent (25%) of the total consolidated assets of the existing **Plans** as set forth in the most recent audited financial statements, coverage shall be afforded for such **Subsidiary** or entity, such **Subsidiary's** or entity's **Plan** and its **Insured Persons** until the end of the **Policy Period**, but only with respect to **Wrongful Acts** committed or allegedly committed after the effective date of such sponsorship by the **Insured Organization**.  Coverage for such **Subsidiary** or entity, such **Subsidiary's** or entity's **Plan** and its **Insured Persons** for such **Plans** whose total assets do exceed twenty-five percent (25%) of the total consolidated assets of the existing **Plans** as set

forth in the most recent audited financial statements shall be afforded for a period of ninety (90) days, but only with respect to **Wrongful Acts** committed or allegedly committed after the effective date of such sponsorship by the **Insured Organization**.  Coverage beyond such ninety (90) days shall only be available if:

1.    written notice of such sponsorship is given to the Underwriters by the **Insured Organization**;

2.    the **Insured Organization** provides the Underwriters with such information in connection therewith as the Underwriters may deem necessary;

3.    the **Insureds** accept any special terms, conditions, exclusions or additional premium as may be required by the Underwriters; and

4.    the Underwriters, at its sole discretion, agrees to provide such coverage.

Notwithstanding the foregoing, with respect to an **ESOP**, coverage shall be granted pursuant to this Clause only for **Claims** relating to **ESOP Administration** and no coverage shall be granted for **Claims** alleging any other **Wrongful Acts** unless such **ESOP** is included in the definition of **Plan** by a written endorsement to this Policy and any related additional premium required by the Underwriters has been paid.

B.    **Cessation of Plan Sponsorship and Termination, Sale or Spin-off of Plan**

In the event a **Plan** ceases to be sponsored by the **Insured Organization** or ceases to be sponsored jointly by the **Insured Organization** and a labor organization after the Inception Date of this Policy, or in the event the **Insured Organization** terminates, sells or spins off any **Plan** before or after the inception date of this Policy; or of any policy issued by the Underwriters of which this Policy is a renewal or replacement, coverage under this Policy with respect to such **Plan** and its **Insured Persons** shall continue until the end of the **Policy Period** for those who were **Insureds** at the time such **Plan** ceased to be sponsored by the **Insured Organization,** or jointly by the **Insured Organization** and a labor organization, or who were **Insureds** at the time of such **Plan** termination, sale or spin-off or who would have been **Insureds** at the time of **Plan** termination, sale or spin-off if this Policy had been in effect, but only with respect to **Wrongful Acts** committed or allegedly committed prior to the date such **Plan** ceased to be sponsored by the **Insured Organization,** or jointly by the **Insured Organization** and a labor organization, or such **Plan** termination, sale or spin-off.  The **Insureds** shall give notice to the Underwriters of cessation of sponsorship as soon as practicable together with such information as the Underwriters may require.

C.    **Merged Plans**

In the event a **Plan** is merged with another **Plan** during the **Policy Period**, this Policy shall continue to provide coverage for both **Plans** for as long as this Policy shall remain in effect and subject to all the terms and conditions of this Policy.

In the event a **Plan** is merged with another plan for which coverage is not provided under this Policy, this Policy shall continue to provide coverage only for the covered **Plan** for as long as

this Policy shall remain in effect and subject to all the terms and conditions of this Policy for **Claims** with regard to **Wrongful Acts** which took place prior to the date the plans merged.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**NEW YORK FREE TRADE ZONE AMENDATORY ENDORSEMENT TO EMPLOYMENT PRACTICES LIABILITY CLAUSE**</u>

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

1.   Clause **I. INSURING CLAUSES** A., B. and C. are amended by adding the phrase "Automatic Extension Period or" before each reference to the **Optional Extension Period** in such Insuring Clauses.

2.   Clause **I. INSURING CLAUSES** A., B. and C. are amended further by replacing the phrase "reported in writing to the Underwriters" each time that it appears with the phrase "reported in writing to the Underwriters or to a licensed agent of the Underwriters in the state of New York".

3.   Clause **II. DEFINITIONS** B. is amended by adding the following at the end of such definition:

   A **Claim** will be deemed first made when the Underwriter receives written notice of a **Claim** or suit from the **Insured** or a third party.

4.   Clause **II. DEFINITIONS** L. is amended by deleting the words "or post-judgment interest" and by the addition of the following:

   In applying the foregoing, punitive and exemplary damages are not insurable in New York.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**NEW YORK FREE TRADE ZONE AMENDATORY ENDORSEMENT TO FIDUCIARY LIABILITY CLAUSE**</u>

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

1.      Clause **I. INSURING CLAUSES** A. and B. are amended further by replacing the phrase "reported in writing to the Underwriters" each time that it appears with the phrase "reported in writing to the Underwriters or to a licensed agent of the Underwriters in the state of New York".

2.      Clause **II. DEFINITIONS** N. **Loss** 1. is amended by deleting the words "or post-judgment interest" and by the addition of the following:

In applying the foregoing, penalties, punitive and exemplary damages are not insurable in New York.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### NEW YORK FREE TRADE ZONE AMENDATORY ENDORSEMENT TO POLICY TERMS AND CONDITIONS

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

1.  The Policy Terms and Conditions are amended to include the following NOTICE at the top of Page 1:

> THIS COVERAGE IS PROVIDED ON A CLAIMS MADE BASIS.  EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE AFFORDED UNDER THIS INSURANCE POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE COVERED CLAIMS THAT ARE FIRST MADE AGAINST AN INSURED WHILE THE INSURANCE IS IN FORCE.  PLEASE REVIEW THE COVERAGE AFFORDED UNDER THIS INSURANCE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

> THE LIMIT OF LIABILITY SHALL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY PAYMENTS OF DEFENSE COSTS.

2.  Clause **I. DEFINITIONS** I. is amended by deleting the words "mold, spores, fungi, germs," and the words "noise, and electric, magnetic or electromagnetic field".

3.  Clause **I. DEFINITIONS** is amended by the addition of the following:

    K.   **"Termination of Coverage"** means the cancellation or nonrenewal of this Policy by the **Insured** or the Insurer if the Insurer offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, an increase in Retention, the addition of an exclusion or any change in coverage less favorable to the **Insured**.

4.  Clause **III. LIMIT OF LIABILITY** is amended by adding the following:

    G.   In the event this Policy provides coverage solely for Claims Expenses arising from an administrative proceeding or other non-judicial dispute resolution forum or in litigation, where the only remedies or relief sought are non-pecuniary in nature and which constitutes Legal Services Insurance subject to Parts 262 and 71 of Title 11 of New York Regulations, such Claims Expenses shall reduce no more than twenty-five percent (25%) of the total of this Policy's Aggregate Limit of Liability set forth in Item 4 of the Declarations and shall be applied against the Retention set forth in Item 5 of the Declarations, if and to the extent such Limit of Liability and/or Retention is applicable to

the Claim.  Such defense-only coverage may not be provided for a claim of legal liability that could be covered by a policy of liability insurance in New York.

5.     The term "**Optional Extension Period**," shall be deemed to include "Automatic Extension Period" in Clause **IX. NOTIFICATION** in this Policy.

6.     Clause **IX. NOTIFICATION** C. is amended by the addition of the following:

Provided, however, that failure by the **Insureds** to give such notice shall not invalidate any **Claim** under the Policy if the **Insureds** show that it was not reasonably possible to do so and that notice was given as soon as was reasonably possible.

Notwithstanding anything to the contrary in the Declarations or this Clause **IX. NOTIFICATION**, the **Insureds** also may provide notice of any **Claim** to any licensed agent of the Underwriter located within the state of New York, with particulars sufficient to identify the **Insureds**.

7.     Clause **X. GENERAL CONDITIONS** A. Representations item 2. is amended by deleting the words "contains misrepresentations made with the actual intent to deceive, or".

8.     The first sentence of Clause **X. GENERAL CONDITIONS** C. Cancellation/Nonrenewal 2. is deleted and replaced with the following:

2.     If this Policy has been in effect for sixty (60) days or less and is not a renewal Policy, the Underwriters may cancel this Policy for any reason by mailing to the **Named Insured** at the address shown in the Declarations written notice of cancellation.  Such notice shall be given at least fifteen (15) days before the effective date of cancellation for one of more of the reasons stated in items i., ii. or iii. below, or twenty (20) days before the effective date of cancellation for any other reason.  A copy of the notice of cancellation shall be given to the **Named Insured's** agent or broker of record, if any.

If this Policy has been in effect for more than sixty (60) days or is a renewal Policy, the Underwriters may cancel this Policy by providing fifteen days' written notice to the **Named Insured**, with a copy to the agent or broker of record, if any, and only for any of the following reasons:

    i.      nonpayment of premium, with the notice of cancellation stating the amount due;

    ii.     conviction of a crime arising out of acts increasing the hazard insured against;

    iii.    discovery of fraud or material misrepresentation by the **Insured** in obtaining the Policy or in presenting any **Claim** thereunder;

    iv.    after issuance of this Policy or its last renewal date, discovery of an act or omission, or a violation of any condition of this Policy, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period**;

    v.     material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of this Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time this Policy was issued or last renewed;

    vi.    a determination by the Superintendent of Insurance that continuation of the present premium volume or the Underwriters would jeopardize the Underwriters' solvency or be hazardous to the interests of policyholders of the Underwriters, its creditors or the public;

    vii.   a determination by the Superintendent of Insurance that the continuation of this Policy would violate, or would place the Underwriters in violation of, any provision of the New York Insurance Laws;

A00531NYFTZ                                                   Page 2 of 6
122010 ed.
Class Code: 2-14057                63

      viii.    revocation or suspension of an **Insured's** license to practice his, her or its profession, or

      ix.    any other reason permitted under applicable New York or federal law.

A notice of cancellation shall state the reason for cancellation.  The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice by the Underwriters shall be equivalent to mailing.

9.      Clause **X. GENERAL CONDITIONS** C. Cancellation/Nonrenewal 4. is deleted and replaced with the following:

    4.    The Underwriters may either (i) not renew this Policy, or (ii) condition its renewal on a change of limits or type of coverage, a reduction of coverage, an increased Deductible or addition of an exclusion, or increased premiums in excess of 10% (excluding a premium increase due to increased exposure units, experience rating, loss rating, retrospective rating or audit) or, in the case of excess coverage, on the satisfaction of requirements pertaining to the underlying insurance ('conditional renewal'), by mailing or delivering written notice of such action to the **Named Insured** at least sixty (60) (or thirty days for excess coverage) but not more than one hundred twenty (120) days before the expiration date of this Policy, with a copy to the agent or broker of record, if any.  If the Underwriters provide such notice late, but before the expiration date of this Policy, the **Named Insured** has the right to maintain the expiring Policy's coverage in effect for sixty (60) days after notice is mailed or delivered, except if notice of conditional renewal is given at least thirty (30) days before the expiration date of this Policy then the terms of the notice shall go into effect as of the renewal date.  Notice of nonrenewal or conditional renewal shall state the specific reason(s) for nonrenewal or conditional renewal and in the case of conditional renewal, state the amount of any premium increase (or, where such amount cannot reasonably be determined as of the time of the notice, a reasonable estimate of such increase, which shall not exceed 5% of the actual amount), and the nature of any other proposed changes.  A copy of such notice shall be provided to the **Named Insured's** agent or broker of record, if any.

As an alternative to the notice described in the paragraph above, the Underwriters may notify the **Named Insured** that this Policy will not be renewed or will be renewed conditionally and that a second notice will be provided specifying the Underwriters' intention, provided that this Policy will remain in effect until the later of sixty (60) days after the date of such second notice or the Policy expiration date.

Any notice of nonrenewal or conditional renewal described in this item D. will advise the **Named Insured** and its agent or broker of the availability of loss information which shall be provided within twenty (20) days of receipt of a request for such information.

Any extension of the **Policy Period** as a result of this item D. shall not create a new annual aggregate Limit of Liability, except that the annual aggregate Limit of Liability of this Policy shall be increased in proportion to the length of such extension; provided that if the **Named Insured** accepts a conditional renewal of this Policy, a new annual aggregate Limit of Liability shall be effective as of the inception date of the renewal.

No notice of nonrenewal or conditional renewal is required where the **Named Insured**, an agent or broker authorized by the **Named Insured**, or another insurer of the **Named**

**Insured** mails or delivers written notice that this Policy is being replaced or no longer is desired.

10.    Clause **XI. OPTIONAL EXTENSION PERIOD** is deleted and replaced with the following:

**XI.**    **EXTENSION PERIODS**

A.    In the event of a "Termination of Coverage" (meaning, cancellation or non-renewal of this Policy by the Underwriters or the **Named Insured** or the Underwriters offer to renew this Policy with a decrease in the Limit of Liability, a reduction in coverage, an increase in Deductible, the addition of an exclusion or any change in coverage less favorable to the **Named Insured**) the **Named Insured** shall have an automatic sixty (60) day extension to report in writing a **Claim** otherwise covered by this Policy, but only with respect to a **Claim** for any act, error or omission or **Pollution Condition** committed or arising on or after the Retroactive Date and before the effective date of the Termination of Coverage (the "Automatic Extension Period"). The aggregate Limit of Liability for the Automatic Extension Period shall be part of and not in addition to the aggregate Limit of Liability set forth in Item 4 of the Declarations.

B.    As an alternative to the Automatic Extension Period, in the event of a Termination of Coverage the **Named Insured** designated in Item 1. of the Declarations shall have the right to purchase a one-year or three-year extension of the coverage granted by this Policy for the premium set forth in Item 6 of the Declarations with respect to any **Claim** first made against any **Insured** and reported in writing to the Underwriters during such extension period, but only with respect to any act, error or omission or **Pollution Condition** committed or arising on or after the Retroactive Date and before the effective date of the Termination of Coverage (the "**Optional Extension Period**). If the claims-made relationship between the Underwriters and the **Named Insured** has been in effect for less than a consecutive three-year period, then the aggregate Limit of Liability for the **Optional Extension Period** shall be the greater of 50% of the aggregate Limit of Liability set forth in Item 4 of the Declarations or the amount of such Limit of Liability remaining at the end of the **Policy Period**. If such claims-made relationship has been in effect for three or more consecutive years, then the aggregate Limit of Liability for the **Optional Extension Period** shall be 100% of the Limit of Liability for the expiring **Policy Period**. The premium set forth in Item 6 of the Declarations shall be adjusted upward to reflect the higher aggregate Limit of Liability for the **Optional Extension Period**.

C.    The Underwriters shall provide written notice to the **Named Insured** of the Automatic Extension Period and the availability of, the premium for, and the importance of purchasing, the **Optional Extension Period** within thirty (30) days after the effective date of a Termination of Coverage.

D.    As a condition precedent to the right to purchase the **Optional Extension Period**, the total premium for this Policy must be paid and any money paid for the **Optional Extension Period** will be applied first to any amount owing for the **Policy Period**. The right to purchase the **Optional Extension Period** shall terminate unless written notice together with full payment of the premium for the **Optional Extension Period** is given to the Underwriters within sixty (60) days from the effective date of the Termination of Coverage, or within thirty (30) days after the date of mailing or delivery of the notice provided by the Underwriters in the above paragraph, whichever is greater. If such notice and premium payment is not so given to the Underwriters, there shall be no right to purchase the **Optional Extension Period**. Any Automatic or **Optional Extension Period** shall apply only in regard to that

coverage subject to the Termination of Coverage. If the Termination of Coverage is due only to a decrease in the aggregate Limit of Liability, the aggregate Limit of Liability for the Automatic and any purchased **Optional Extension Period** shall be no greater than the amount of such decrease.

E. If the claims-made relationship between the **Named Insured** and the Underwriters has continued for less than one year and this Policy is canceled for nonpayment of premium or fraud, the **Named Insured** shall not have the right to purchase the **Optional Extension Period**. If the claims-made relationship has continued for a year or longer and this Policy is canceled for nonpayment or fraud, the Underwriters have no obligation to provide a premium quotation for the **Optional Extension Period** unless requested by the **Named Insured**.

F. The **Optional Extension Period** shall be non-cancelable except for nonpayment of premium, and the entire premium for the **Optional Extension Period** shall be deemed fully earned at inception. If similar insurance to that provided by this Policy is in force during the Automatic or **Optional Extension Period**, the coverage afforded by this Policy shall be excess over any such valid and collectible insurance.

G. If the **Named Insured** is in liquidation or bankruptcy, or permanently ceases operation, and if the **Named Insured** or its designated trustee, although entitled to, does not purchase the **Optional Extension Period**, the individual **Insureds** under this Policy shall have one hundred twenty (120) days from the effective of the Termination of Coverage to buy the **Optional Extension Period**. The Underwriters have no obligation to provide notice of this right to any individual **Insured**. Such right must be exercised in accordance with, and is subject to, the provisions of this Clause **XI**.

11. Clause **XIII. ACTION AGAINST THE UNDERWRITERS** is amended by deleting the words "fully and finally" before the word "determined" and by the addition of the following:

Provided, however, if the Underwriter does not pay any judgment covered by the terms of this Policy within thirty (30) days from the service of notice of the judgment upon the **Insured** or its attorney and the Underwriter, then an action may be brought against the Underwriter under the terms of this Policy for the amount of judgment not exceeding the amount of the applicable Limit of Liability under this Policy, except during a stay or limited stay of execution against the **Insured** on such judgment.

12. Clause **XVII. BANKRUPTCY** is amended by the addition of the words "or of their estates" after the words "**Insureds**".

13. The Policy is amended by the addition of the following Clause **XX.**:

**XX.   LOSS INFORMATION**

Upon written request by the **Insured** or the **Insured's** authorized agent or broker, the Insurer shall mail or deliver the following **Loss** information for the time the Policy was in effect within twenty (20) days of such request:

1. information on closed **Claims**, including the date and description of the **Claim**, and any payments,

2.   information on open **Claims**, including the date and description of the **Claim**, and amounts of any payments; and

3.   information on notice of any **Wrongful Acts**, including the date and description of such notice.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### NEW YORK REQUIRED ADDENDUM TO DECLARATIONS PAGE AND APPLICATION

This Addendum provides the **Insured** with the following Notice about the insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

This is a claims-made policy.  As such:

(1) This Policy provides no coverage for **Claims** arising out of incidents, occurrences or alleged wrongful acts which took place before the Retroactive Date stated in the Declarations Page.

(2) This Policy covers only **Claims** actually made against the **Insured** while the Policy remains in effect (and, solely to the extent provided in this Policy, **Circumstances** reported to the Insurer as provided in this Policy) and all coverage under this Policy ceases upon the termination of this Policy, except for the Automatic Extension Period coverage, unless the Named Insured purchases an **Optional Extension Period**.

(3) The length of the Automatic Extension Period is sixty (60) days.  The length of the **Optional Extension Period** that can be purchased under this Policy is a three-year or a one-year **Optional Extension Period**.  The Automatic Extension Period is included as part of the **Optional Extension Period** for purposes of calculating the length of the total extension period under this Policy.

(4) Because the **Optional Extension Period** available to be purchased under this Policy is not for an unlimited duration, there may be gaps in coverage that may arise upon the expiration of any **Optional Extension Period** purchased under this Policy.

(5) During the first several years of a claims-made relationship, claims-made rates are comparatively lower than occurrence rates, and the **Insured** can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), insurance coverage provided by this Policy includes losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:** The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

(LMA 9104 amended)

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**SANCTION LIMITATION AND EXCLUSION CLAUSE- NEW YORK**</u>

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

Beazley Insurance Company, Inc. shall not be deemed to provide coverage and shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose Beazley Insurance Company, Inc. to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law, regulations of the United States of America or on the list of Specially Designated National and Blocked Persons issued by the United States Treasury Department's Office of Foreign Asset Control (OFAC).

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E02804ANY                                                                    Page 1 of 1
112011 ed.
Class Code: 2-14057                            70

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND ACQUISITION THRESHOLD

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause V. Adjustment of the Employment Practices Liability Clause is deleted and replaced with the following:

V.      Adjustment

This Policy is issued and the premium computed on the basis of the information submitted to the Underwriters as part of the **Application**.  In the event the **Named Insured**, after the inception date of this Policy:

a.      merges with another entity such that the **Named Insured** is the surviving entity; or

b.      acquires assets of another entity or creates or acquires a **Subsidiary**  whose employees exceed 30% of the total number of employees of the **Insured Organization** at the time of acquisition,

coverage shall be afforded for a period of ninety (90) days for any **Loss** in any way involving the assets acquired or the assets, liabilities, directors, officers or employees of the entity acquired or merged with, or such **Subsidiary**.  Coverage beyond such ninety (90) day period shall only be available if written notice of such transaction or event is given to Underwriters by the **Named Insured**; the **Named Insured** provides Underwriters with such information in connection therewith as Underwriters may deem necessary; the **Insureds** accept any special terms, conditions, exclusions or additional premium charge as may be required by Underwriters; and Underwriters, at their sole discretion, agree to provide such coverage.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND DEFINITION OF APPLICATION

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions A. "**Application**" of the Employment Practices Liability Clause is deleted and replaced with the following:

A.       "**Application**" means all applications for this Policy, including all attachments and other materials submitted therewith or incorporated therein, and any other documents or information submitted in connection with the underwriting of this Policy, including any endorsement or other part thereof.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E01596                                                                                                      Page 1 of 1
122009 ed.
Class Code: 2-14057                                    72

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND DEFINITION OF DISCRIMINATION

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause **II. DEFINITIONS** D. **Discrimination**, of the **Employment Practices Liability Clause**, is deleted in its entirety and replaced with the following:

D.       "**Discrimination**" means any actual or alleged termination of the employment relationship, demotion, failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis which is or is alleged to be prohibited by federal, state or local law, including The Genetic Information Nondiscrimination Act of 2008.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E07072                                                                                       Page 1 of 1
052015 ed.
Class Code: 2-14057                           73

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND DEFINITION OF EMPLOYEE TO INCLUDE FUTURE EMPLOYEES

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions E. "**Employee**" of the Employment Practices Liability Clause is deleted and replaced with the following:

E. **Employee** means all persons whose labor or service is currently, has formerly or will be engaged by and directed by the **Insured Organization**. This includes applicants for employment, employees, volunteers, part time, seasonal, leased and temporary **Employees** as well as any individual employed in a supervisory, managerial or confidential position and **Independent Contractors**. Leased employees are **Employees**, but only to the extent that such leased employee brings a **Claim** against an **Insured**. **Employees** who are leased to another employer are not **Employees**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E00750                                                                                          Page 1 of 1
092008 ed.
Class Code: 2-14057                              74

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND DEFINITION OF INDEPENDENT CONTRACTOR

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions I. "**Independent Contractor**" of the Employment Practices Liability Clause is deleted and replaced with the following:

I.        "**Independent Contractor**" means any natural person independent contractor who performs labor or service for the **Insured Organization** pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Insured Organization**.  The status of an individual as an **Independent Contractor** shall be determined as of the date of the alleged **Wrongful Act**.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND HARASSMENT TO INCLUDE BULLYING

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions G. "**Harassment**" of the Employment Practices Liability Clause is deleted and replaced with the following:

G.      "**Harassment**" means actual or alleged unwelcome sexual advances, requests for sexual favors or other verbal, visual or physical conduct, including bullying, of a sexual or non-sexual nature, where such harassment is based on an employee's race, color, religion, age, sex, disability pregnancy, sexual orientation, national origin, or any other basis protected by federal, state or local law and is explicitly or implicitly made a condition of employment, used as a basis for employment decisions or performance, or creates a hostile, intimidating or offensive work environment or that interferes with performance.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND NOTICE OF CLAIM TO INCLUDE E-MAIL

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.    Clause IX. Notification C. of the Policy is deleted and replaced with the following:

C.    Notice to the Underwriters provided in Clause IX.A. and B shall be given to the firm shown in Item 8.a. of the Declarations.  All other notices to the Underwriters under this Policy shall be given to the firm shown in Item 8.b. of the Declarations.  All notices under any provision of this Policy must be made in writing and delivered by electronic mail, prepaid express courier, certified mail or fax.  Notices given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee.

2.    Item 8. of the Declarations is amended to include the following electronic mail address:

claims@beazley.com

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND NOTICE OF CLAIM TO CONTROL GROUP**</u>

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1. Clause IX.A. of the Policy Terms and Conditions is deleted in its entirety and replaced with the following:

    A. In the event the **Executive Officer** of the **Insured Organization** becomes aware that a **Claim** has been made against any of the **Insureds**, the **Insureds** shall, as a condition precedent to their rights to payment under this Policy, give to the Underwriters notice in writing of such **Claim** as soon as practicable but in no event later than the earliest of the following times:

        1. 90 days after the date the **Executive Officer** becomes aware of such **Claim**, or

        2. 90 days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

2. Solely with respect to Clause IX.A. of the Policy Terms and Conditions, Clause **II. DEFINITIONS** J. "**Executive Officer**" of the Fiduciary Liability Clause is deleted in its entirety and replaced with the following:

    F. "**Executive Officer**" means Risk Manager, General Counsel or Director of Human Resources of the Insured Organization.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND OTHER INSURANCE – VALID AND COLLECTIBLE

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause X.D. Other Insurance is deleted and replaced with the following:

D.      Other Insurance

This Policy shall apply in excess of any other existing valid and collectible policy including any self insured retention or deductible portion thereof, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written only as specific excess insurance over the Limits of Liability of this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

**AMEND SUBLIMIT FOR VOLUNTARY COMPLIANCE FEES AND DEFENSE COSTS**

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the $100,000 sublimit applicable to **Voluntary Compliance Fees** and **Defense Costs** incurred with respect to a **Voluntary Compliance Notice** as as set forth in Clause I. Insuring Clauses B. of the Fiduciary Liability Clause is deleted and replaced with $150,000. Such amount shall be subject to a Retention set forth in Item 5, of the Declarations and shall be part of any not in addition to the Limit of Liability set forth in Item 4. of the Declarations.  This Insuring Clause shall not apply to any **Voluntary Compliance Fees** and **Defense Costs** incurred with respect to the **Insured's** participation in any **Voluntary Compliance Program** initiated prior to the Inception Date of this Policy.

All other terms and conditions of this Policy remain unchanged.

_Authorized Representative_

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### AMEND SUBSIDIARY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause I. Definitions J. "**Subsidiary**" of the Policy Terms and Conditions is amended to include the following entity (ies):

**EQX Hotel Management, LLC**
**Blink Holdings, Inc. (solely with respect to the Fiduciary Liability Clause)**

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E00694
082008  ed.
Class Code: 2-14057                                          Page 1 of 1

82

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND THIRD PARTY WRONGFUL ACT

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II Definitions P, "**Third Party Wrongful Act**" of the Employment Practices Liability Clause is deleted and replaced with the following:

P.      "**Third Party Wrongful Act**" means any actual or alleged harassment or discrimination, including discriminatory or sexual harassment, by any of the **Insureds** against any natural person who is not an **Insured Person** or an applicant for employment of the **Insured Organization**.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E01617                                                                      Page 1 of 1
122009 ed.
Class Code: 2-14057                             83

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## HIPAA ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that solely with respect to any **Claim** for actual or alleged violations of the Health Insurance Portability and Accountability Act (HIPAA):

1.    Clause II. Definitions B.2. of the Director, Officers and Entity Liability Clause and the Employment Practices Liability Clause is deleted.  The term "**Claim**" shall not include any criminal proceeding.

2.    Clause II.  Definitions I.2. of the Director, Officers and Entity Liability Clause and the Employment Practices Liability Clause  shall not apply.

3.    The Underwriters maximum aggregate limit of liability for all civil fines for violation of HIPAA shall be $150,000 which shall be part of and not in addition to the Limit of Liability shown in Item 4. of the Declarations.

4.    The Underwriters shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim** for costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to comply with HIPAA.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E01445                                                                                      Page 1 of 1
092009 ed.
Class Code: 2-14057                                  84

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**INVESTMENT LOSS**</u>

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause **III. EXCLUSIONS** I. of the Fiduciary Liability Clause is deleted in its entirety and replaced with the following:

I.  for **Benefits** which are or may become due, except to the extent that such sums are payable as a personal obligation of a natural **Insured** because of such natural person **Insured's Wrongful Act**; provided, that this exclusion shall not apply to:

1.  a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** and/or loss in the actual accounts of participants in a **Plan** by reason of a change in value of the investments held by that **Plan**, including, but not limited to, the securities of the **Company** regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits"; or

2.  **Defense Costs**;

All other terms and conditions of this Policy remain unchanged.

_Authorized Representative_

E05495
022014 ed.
Class Code: 2-14057

Page 1 of 1

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### LEADERS PREFERRED℠ ENDORSEMENT
### EMPLOYMENT PRACTICES LIABILITY CLAUSE

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.   Clause VI. Settlement and Defense of the Policy Terms and Conditions is deleted and replaced with the following:

VI.   Settlement and Defense

A.   It shall be the duty of the **Insureds** and not the duty of the Underwriters to defend **Claims**. The **Insured** has the right to select defense counsel, subject to Underwriters' prior written consent, which shall not be unreasonably withheld. Underwriters have the right to rescind consent to counsel selected by the Insured upon sixty (60) days advance notification to the **Insured**. The maximum rates payable under this Policy for defense counsel selected by the **Insured** is ███████ per hour for attorneys and ███████ per hour for paralegals. The Underwriters shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part hereunder.

Notwithstanding the foregoing, the **Named Insured** may, at its option and on behalf of all **Insureds**, tender the defense of any **Claim** to Underwriters, in which case Underwriters shall assume the duty to defend.

B.   The **Insureds** shall not settle any **Claim**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Underwriters' prior written consent, which shall not be unreasonably withheld. The Underwriters shall not be liable for any settlement, **Defense Costs**, assumed obligation, admission or stipulated judgment to which they have not consented or for which the **Insureds** are not legally obligated as a result of a **Claim** for a **Wrongful Act**. Notwithstanding the foregoing, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding such Retention, including **Defense Costs**, then the Underwriters' consent shall not be required for such disposition.

C.   Subject to Clause V. of the Private Organization Directors, Officers and Entity Liability Clause, if applicable and VI.D. below, the Underwriters shall advance on behalf of the **Insureds**, **Defense Costs** which the **Insureds** have incurred in connection with a **Claim** made against them, prior to the final disposition of such **Claim**, provided that to the extent it is finally established that any such **Defense**

**Costs** are not covered under this Policy, the **Insureds**, severally according to their interests, shall repay such **Defense Costs** to the Underwriters.   The Underwriters shall pay **Defense Costs** no more than once every ninety (90) days.

D.   If the **Insureds** withhold consent to a settlement acceptable to the claimant and recommended by Underwriters, then the Underwriters liability for such **Claim** shall not exceed:

1.   the amount for which the **Claim** could have settled and the **Defense Costs** incurred as of the date such settlement was proposed to the **Insureds**; plus

2.   80% of any **Loss** incurred after the date such settlement or compromise was proposed to the **Insureds**, with the remaining 20% of such **Loss** to be borne by the **Insureds** at their own risk and uninsured or the applicable limit of liability whichever is less.

2.   Clause VII. Allocation of the Policy Terms and Conditions is deleted and replaced with the following:

VII.   Allocation

If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim** made against the **Insured** contains both covered and non-covered matters, or because a **Claim** is made against both the **Insured** and others not insured under this Policy, the **Insured** and the Underwriters will use their best efforts to determine a fair and appropriate allocation between that portion of **Loss** that is covered under this Policy and that portion of loss that is not covered under this Policy.

3.   Clause IX.A Notification of the Policy Terms and Conditions is deleted and replaced with the following:

A.   If the applicable Retention indicated in Item 5. of the Declarations Page is $100,000 or more, the **Insureds** shall, as a condition precedent to their rights under this Policy, give to Underwriters notice in writing of any **Claim** as soon as practicable after the **Executive Officer** of the **Insured Organization** becomes aware that **Defense Costs** in connection with such **Claim** has exceeded 50% of the Retention provided all such **Claims** must be reported no later than the end of the **Policy Period**, or **Optional Extension Period** (if applicable).  All other **Claims** must be reported via bordereau not later than 30 days prior to expiration of the Policy, or sixty (60) days after the expiration of the **Policy Period** in the case of **Claims** first made against the **Insured** during the last sixty (60) days of the **Policy Period**.

If the applicable Retention indicated in Item 5. of the Declarations Page is less than $100,000, the **Insureds** shall, as a condition precedent to their rights under this Policy, give to Underwriters notice in writing of any **Claim** as soon as practicable after the **Executive Officer** of the **Insured Organization** becomes aware of such **Claim** provided all such **Claims** must be reported no later than the end of the **Policy Period**, in accordance with the requirements of the **Optional Extension Period** (if applicable), or sixty (60) days after the expiration of the **Policy Period** in the case of **Claims** first made against the **Insured** during the last sixty (60) days of the **Policy Period**.

4.   Clause X. General Conditions A. of the Policy Terms And Conditions is deleted and replaced with the following:

A.   In issuing this policy, Underwriters have relied upon the statements and representations in the **Application**. The **Insureds** represent that all such statements and representations are true and deemed material to the acceptance of the risk or the hazard assumed by Underwriters under this policy.

The **Insureds** agree that in the event any such statements or representations are untrue and made with the intent to deceive, this policy will not afford any coverage with respect to any of the following **Insureds**:

1.   any individual **Insured** who knew the facts that were not truthfully disclosed in the **Application**, provided that no knowledge possessed by any individual **Insured** shall be imputed to any other individual **Insured**; and

2.   the **Insured Organization**, if an **Executive Officer** had actual knowledge that the facts were not truthfully disclosed in the **Application.**

5.   Solely with respect to coverage under the Employment Practices Liability Clause, Clause II. Exclusions A.2. of the Policy Terms And Conditions is deleted and replaced with the following:

2.   any **Wrongful Act** or any fact, circumstance, transaction or situation which has been the subject of any notice of a **Claim** or notice of a potential **Claim** given prior to the **Policy Period** under any other employment practices liability policy;

6.   Clause II. Definitions A. "**Application**" of the Employment Practices Liability Clause is deleted and replaced with the following:

A.   "**Application**" means the application for this Policy and any attachments thereto.

7.   Clause II. Definitions B.2.b., B.2.c. and B.4. of the Employment Practices Liability Clause are deleted and replaced with the following:

b.   the receipt of a notice of charges, investigative order or similar document;

c.   receipt of a written notice or subpoena from an investigatory authority identifying such **Insured** as an entity or person against whom a formal proceeding may be commenced;

4.   an arbitration or mediation or other alternative dispute resolution proceeding.

8.   Clause II. Definitions C. "**Defense Costs**" of the Employment Practices Liability Clause is deleted and replaced with the following:

C.   "**Defense Costs**" means reasonable and necessary: (1) legal fees and expenses incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of appeal, supersedeas, injunction, attachment or similar bonds (provided, however, Underwriters shall have not obligation to apply for or furnish any bond for appeal, supersedeas, injunction, attachment or any similar purpose; and (2) those costs previously incurred by the **Insured** in connection with any regulatory or administrative investigations if such investigation results in a **Claim**. **Defense Costs** does not include salaries, regular or overtime wages, fees or benefit expenses associated with **Employees** or the **Insured Organization's** overhead expenses.

9.   Clause II. Definitions D. "**Discrimination**" of the Employment Practices Liability Clause is amended to include actual or alleged termination of the employment relationship, demotion, failure or refusal to hire or promote, denial of an employment benefit or the taking of adverse or differential employment action because of military status in violation of Uniformed Services Employment Reemployment Rights Act (USERRA).

10.    Clause II. Definitions F. "**Executive Officer**" of the Employment Practices Liability Clause is deleted and replaced with the following:

      F.    "**Executive Officer**" means the Risk Manager, General Counsel or Director of Human Resources of the **Insured Organization.**

11.    Clause II. Definitions H. "**Inappropriate Employment Conduct**" of the Employment Practices Liability Clause is amended to include breach of implied employment contract, negligent training or invasion of privacy under the Healthcare Insurance Portability and Accountability Act ("HIPAA").

12.    Clause II. Definitions I. "**Independent Contractor**" of the Employment Practices Liability Clause is deleted and replaced with the following:

      I.    "**Independent Contractor**" means any natural person independent contractor who performs labor or service for the **Insured Organization** on a full-time basis where such labor or service is under the exclusive direction of the **Insured Organization**. An **Independent Contractor** shall be considered an **Employee** solely for **Claims** by such person for a **Wrongful Act** taking place while working for the **Insured Organization** or if the **Insured Organization** would be responsible for such person's **Wrongful Act** in the absence of an agreement to indemnify.

13.    Clause II. Definitions L. "**Loss**" of the Employment Practices Liability Clause is amended to include costs of educational and sensitivity training programs where required as part of a settlement, consent decree, judgement or order; provided, that the Underwriters maximum aggregate limit of liability for such costs will be 25% of the limit of liability applicable to the Employment Practices Liability Clause stated in Item 4. of the Declarations or $1,000,000 whichever is less.

14.    Clause II. Definitions L.7. of the Employment Practices Liability Clause is deleted.

15.    Clause III. Exclusions C. of the Employment Practices Liability Clause is deleted and replaced with the following:

      C.    for actual or alleged violation(s) of the Employee Retirement Income Security Act of 1974 ("ERISA"), or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enrol or maintain the enrolment of an **Insured Person** or dependent in, any employee benefit plan, fund or program, or contractual agreement to provide similar benefits; provided, however this exclusion shall not apply to a **Claim** for **Retaliation**;

16.    Clause III. Exclusions F. of the Employment Practices Liability Clause is deleted and replaced with the following:

      F.    for the liability of others assumed by an **Insured** under any contract or agreement, oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement; provided, that this Exclusion shall not apply to:

            a.    **Defense Costs** for which the Underwriters' maximum aggregate limit of liability for all such **Defense Costs** under this Policy shall be $1,000,000 which shall be part of and not in addition to the aggregate limit of liability applicable to the Employment Practices Liability Clause set forth in Item 4. of the Declarations; or

        b.      liability assumed under an indemnification provision of an independent contractor/temporary employment agency agreement for liability arising from the conduct of the **Independent Contractor** while working with the **Insured Organization**.

17.     If, prior to the implementation of a Reduction In Force ("RIF") or prior to the termination of any senior level **Employee**, director or officer, the **Insured** obtains and adopts the written advice of employment counsel as respects such RIF or termination, then the applicable Retention amount stated in Item 5. of the Declarations shall be reduced by twenty-five percent (25%) (up to a maximum of $75,000) for any **Claim** commenced by any **Employee** arising from the events of the RIF or termination.

18.     If, per the recommendation of the Underwriters, the **Insured** agrees to mediate a **Claim** and such mediation results in settlement of that **Claim**, then the applicable Retention amount stated in Item 5. of the Declarations shall be retroactively reduced by ten percent (10%).

19.     In the event that, subsequent to the inception date of this Policy, Underwriters introduce a new Employment Practices Liability form or a new version of this Leaders Preferred Endorsement, either of which offer broader coverage, this Policy shall be construed to include the broadened coverage.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### OPTIONAL EXTENSION PERIOD OPTIONS

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Item 7. of the Declarations is deleted and replaced with the following:

Item 7. Optional Extension Period

1. (a) Premium for Optional Extension Period:        95 % of the total premium for the Policy

   (b) Length of Optional Extension Period:       12 months

2. (a) Premium for Optional Extension Period:        125 % of the total premium for the Policy

   (b) Length of Optional Extension Period:       24 months

3. (a) Premium for Optional Extension Period:        150 % of the total premium for the Policy

   (b) Length of Optional Extension Period:       36 months

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E00812

102008 ed.

Class Code: 2-14057

Page 1 of 1

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## PATIENT PROTECTION AND AFFORDABLE CARE ACT

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause **II. DEFINITIONS** N. **"Loss"** of the Fiduciary Liability Clause is amended by the addition of the following:

solely in connection with a **Plan**, the civil penalties under the Patient Protection and Affordable Care Act (PPACA), subject to the aggregate sublimit of $5,000,000, which amount is in part of, and not in addition to, the Underwriter's maximum aggregate Limit of Liability set forth in Item 4. of the Declarations for the Fiduciary Liability Clause.

No Retention shall apply to **Loss** for civil penalties under the Patient Protection and Affordable Care Act (PPACA) solely in connection with a **Plan**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E04714                                                                                                   Page 1 of 1
052013 ed.
Class Code: 2-14057                                          92

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### PRE-APPROVED CHOICE OF COUNSEL ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the law firm of LaRocca Hornik Rosen Greenberg & Blaha is hereby consented to by the Underwriters as approved Defense Counsel for defense of **Claims** at a maximum rate of ▮ per partner, ▮ per associate, and ▮ per paralegal.  When a situation arises where rates above the maximum are required, such a request will require the Underwriters' consent.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### PRE-APPROVED CHOICE OF COUNSEL ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the law firm of Jackson Lewis is hereby consented to by the Underwriters as approved Defense Counsel for defense of **Claims** at a maximum rate of ▮▮▮ per partner, ▮▮▮ per associate, and ▮▮▮ per paralegal. When a situation arises where rates above the maximum are required, such a request will require the Underwriters' consent.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Insurer: Beazley Insurance Company, Inc.**

<u>**PRO RATA CANCELLATION FOR ANY REASON**</u>

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the final paragraph of Clause X. General Conditions C. Cancellation/Nonrenewal 3. of the Policy Terms and Conditions is deleted in its entirety and replaced with the following:

3.    If this Policy is cancelled for any reason earned premium shall be computed on pro rata basis.  Premium adjustment may be made at the time cancellation becomes effective, but payment or tender of unearned Premium is not a condition of cancellation.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E02496                                                                                                      Page 1 of 1
012011 ed.
Class Code: 2-14057                               95

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## RETALIATION CARVEBACK TO NLRA EXCLUSION

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause III. Exclusions E. of the Employment Practices Liability Clause shall not apply to any **Claim** for **Retaliation**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E00849
122008 ed.
Class Code: 2-14057

Page 1 of 1

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## SEPARATE PENDING AND PRIOR LITIGATION DATE FOR EXCESS LIMIT OF LIABILITY UNDER SCHEDULED CLAUSE

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that with respect to the $5,000,000 limit of liability in excess of $5,000,000 under the Employment Practices Liability Clause(s) of this Policy, Item 9. of the Declarations is deleted and replaced with the following:

9.       Prior and Pending Litigation Date: 10-Feb-2011

All other terms and conditions of this Policy remain unchanged..

_____
Authorized Representative

E00978                                                                                    Page 1 of 1
012009 ed.
Class Code: 2-14057                              97

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### SEPARATE RETENTION FOR CLASS OR MASS ACTION CLAIMS

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that

1.      For purposes of this endorsement, the term "**Class Action Claim or Mass Action Claim**" means any **Claim** brought or maintained by or on behalf of, or for the benefit of:

      a.      three or more natural persons who are acting in concert, whether or not such natural persons are represented by one or more legal counsel;

      b.      more than one natural persons if any of such natural persons are alleging systemic **Wrongful Acts** or a pattern and practice of **Wrongful Acts** and are seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**, whether or not such natural persons are represented by one or more legal counsel; or

      c.      a governmental entity, department or agency alleging systemic **Wrongful Acts** or a pattern and practice of **Wrongful Acts** and seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**.

2.      Solely with respect to any **Class Action Claim or Mass Action Claim,** the Retention set forth in Item 5. of the Declarations is deleted and replaced with the following:

      Item 5. Retention(s):

| | Retention Each Claim: |
|---|---|
| Each **Class Action Claim or Mass Action Claim** | $250,000 |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## SETTLOR ENDORSEMENT

This endorsement modifies insurance provided under the following:

**FIDUCIARY LIABILITY CLAUSE**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.  Clause **I. INSURING CLAUSES** A. of the Fiduciary Liability Clause is deleted in its entirety and replaced with the following:

    A.  The Underwriters shall pay on behalf of the **Insureds**:

        1.  all **Loss** resulting from any **Claim** first made against any **Insured** and reported in writing to the Underwriters during the **Policy Period** or **Optional Extension Period**, if applicable, for a **Wrongful Act** (other than a **Settlor Wrongful Act**); or

        2.  **Defense Costs** only resulting from any **Claim** first made against any **Insured** and reported in writing to the Underwriters during the **Policy Period** or **Optional Extension Period**, if applicable, for a **Settlor Wrongful Act**.

2.  Clause **II. DEFINITIONS** M. **"Insured Person"** of the Fiduciary Liability Clause is deleted in its entirety and replaced with the following:

    M.  **"Insured Person"** means all persons who were, now are, or shall be employees of the **Insured Organization** or a **Plan**; or duly elected or appointed directors, officers, trustees or **Managers** of the **Insured Organization** or a **Plan** in his or her capacity as a **Fiduciary**, **Administrator** or settlor of a **Plan** including all persons outside the United States of America serving in a functionally equivalent role including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

3.  Clause **II. DEFINITIONS** O. **"Plan"** of the Fiduciary Liability Clause is amended by the addition of the following:

    8.  any plan described in paragraphs 1., 2. or 3. above while such plan is being actively developed, formed or proposed by the **Insured Organization** prior to the formal creation of such plan.

4.  Clause **II. DEFINITIONS** S. **"Wrongful Act"** of the Fiduciary Liability Clause is amended by the addition of the following:

    5.  **Settlor Wrongful Act**.

5.  Clause **II. DEFINITIONS** of the Fiduciary Liability Clause is amended by the addition of:

    **"Settlor Wrongful Act"** means any actual or alleged act, error or omission by any **Insured** while acting in a settlor capacity in connection with a **Plan.**

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.  HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Effective date of this Endorsement: 10-Mar-2017**
**This Endorsement is attached to and forms a part of Policy Number: V17FCF170301**
**Insurer: Beazley Insurance Company, Inc.**

**COMMON CLAIM TIE-IN LIMITS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**Beazley One Management Liability Insurance Policy**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding anything to the contrary contained in this Policy, in the event a **Claim** is made against the **Insured** under this Policy and Blink Holdings Inc under V1DF79170101 alleging the same set of facts, circumstances or arising out of the same **Wrongful Acts**, the Underwriters maximum Aggregate Limit of Liability under this Policy and V1DF79170101 shall not exceed the amount of the largest applicable Limit of Liability.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E06786
022015 ed.
Class Code: 2-14057

# EXHIBIT C

# National Casualty Company

Home Office
Madison, Wisconsin
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

## COMMON POLICY – DECLARATIONS

**Policy No.**   KKO0000005740000
**Previous Policy No.**   KKO0000004742300

**NAMED INSURED AND ADDRESS:**
EQUINOX HOLDINGS, INC.
ONE PARK AVENUE
NEW YORK, NY 10016

**PRODUCER'S NAME AND ADDRESS:**
**K&K Insurance**
**1712 Magnavox Way**
**P.O. Box 2338**
**Fort Wayne, IN  46801**

**POLICY PERIOD:**  From          09/01/15          to          09/15/16
at 12:01 a.m. Standard Time at your mailing address shown above.

**BUSINESS DESCRIPTION:** HEALTH CLUB

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts and separate policies for which a premium is indicated. This premium may be subject to adjustment.

PREMIUM

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | $ |
| Commercial Inland Marine Coverage Part | |
| Commercial Crime Coverage Part | |
| Commercial Auto Coverage Part | $ |
| Liquor Liability Coverage Part | $ |
| Employee Benefits Liability | $ |
| Errors and Omission Coverage Part | |
| Employment-Related Practices Liability | |
| Minimum Premium | $ |
| TOTAL PREMIUM | $ |
| NY MVLEF | $ |

## 1-44311

**FORMS APPLICABLE TO ALL COVERAGE PARTS:**   UT-COVPG-NY(03/13)      KR-SP-1(04/07)
IL0017(11/98)

**COUNTERSIGNED**            09/01/15            **by:**

**DATE**

*Scott [signature]*

**AUTHORIZED REPRESENTATIVE**

KR-D-1-NY                                                                                    04/10

# National Casualty Company

Home Office:

Madison, Wisconsin

Administrative Office:

8877 North Gainey Center Drive • Scottsdale, Arizona 85258

1-800-423-7675

A STOCK COMPANY

---

**NOTICE:**

**THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                      President

The information contained herein replaces any similar information contained elsewhere in the policy.

**Policy No.** KKO0000005740000                                   **Declarations Extension**

**The Named Insured, wherever it may appear throughout the policy, shall read as follows:**

THROUGHOUT THIS POLICY THE WORDS "YOU" AND "YOUR" REFER TO THE NAMED INSURED SHOWN IN
THE DECLARATIONS AND ANY BUSINESS ENTITY INCORPORATED OR ORGANIZED UNDER THE LAWS OF THE
UNITED STATES OF AMERICA (INCLUDING ANY STATE THEREOF), ITS TERRITORIES OR POSSESSIONS OR
CANADA (INCLUDING ANY PROVINCE THEREOF) IN WHICH THE NAMED INSURED SHOWN IN THE
DECLARATIONS OWNS, DURING THE POLICY PERIOD, AN INTEREST OF MORE THAN 50 PERCENT. IF OTHER
VALID AND COLLECTIBLE INSURANCE IS AVAILABLE TO ANY BUSINESS ENTITY COVERED BY THIS POLICY
SOLELY BY REASON OF OWNERSHIP BY THE NAMED INSURED SHOWN IN THE DECLARATIONS IN EXCESS
OF 50 PERCENT, THIS INSURANCE IS EXCESS OVER THE OTHER INSURANCE, WHETHER PRIMARY, EXCESS,
CONTINGENT, OR ON ANY OTHER BASIS.

**KR-SP-1**                                                       **04/07**

**POLICY NUMBER:**  KKO0000005740000                                                      **IL 00 17 11 98**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THE FOLLOWING INTERLINE FORMS APPLY TO THE COVERAGE PART IDENTIFIED:**

| FORM NUMBER | COVERAGE PART |
|---|---|
| IL0023(07/02) | COMMERCIAL GENERAL LIABILITY, COMMERCIAL LIQUOR LIABILITY |
| IL0183(08/08) | COMMERCIAL AUTOMOBILE |
| IL0268(01/14) | COMMERCIAL GENERAL LIABILITY, COMMERCIAL LIQUOR LIABILITY |
| UT-131G(03/92) | COMMERCIAL AUTOMOBILE, COMMERCIAL GENERAL LIABILITY, COMMERCIAL LIQUOR LIABILITY,,, |

**KR-SP-2**                                                                                    **04/07**

# National Casualty Company

**ENDORSEMENT NO.** 0000



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

TITLE: SCHEDULE A
CONTINUED FROM FORM KR-GL-D-1 "COMMERCIAL GENERAL LIABILITY-DECLARATIONS"

0015: 450 WEST 17TH STREET, NEW YORK, NY 10011
0016: 1431 SECOND AVENUE, NEW YORK, NY 10021
0017: 203 E. 86TH ST., NEW YORK, NY 10028
0018: 344 AMSTERDAM AVENUE, NEW YORK, NY 10024
0019: 204 W. 77TH ST., NEW YORK, NY 10024
0020: 421 HUDSON STREET, NEW YORK, NY 10014
0021: 45 ROCKEFELLER PLAZA, NEW YORK, NY 10111
0022: 1095 6TH AVE, NEW YORK, NY 10036
0023: 225 LIBERTY STREET, NEW YORK, NY 10281
0024: 194 JORALEMON STREET, BROOKLYN, NY 11201
0025: 101 WEST 67TH STREET, NEW YORK, NY 10023
0026: 330-334 EAST 61ST STREET, NEW YORK, NY 10021
0027: 800 WHITE PLAINS ROAD, SCARSDALE, NY 10583
0028: 72 HEIGHTS ROAD, DARIEN, CT 06820
0029: 7550 JERICHO TURNPIKE, WOODBURY, NY 11797
0030: 90 NORTHERN BOULEVARD, ROSLYN, NY 11548
0031: 1053 WEST BOSTON POST ROAD, MAMARONECK, NY 10543
0032: 90 EAST SHORE ROAD, GREAT NECK, NY 11023
0033: 16 OLD TRACK ROAD, GREENWICH, CT 06830
0034: 99 BUSINESS PARK DRIVE, ARMONK, NY 10504
0035: 68 RIVER RD, SUMMIT, NJ 07901
0036: 776 RTE 17 N, PARAMUS, NJ 07652
0037: 131 DARTMOUTH STREET, BOSTON, MA 02116
0038: 225 FRANKLIN STREET, BOSTON, MA 02110
0039: 200 BOYLSTON STREET, CHESTNUT HILL, MA 02467
0040: 4 AVERY STREET, BOSTON, MA 02111
0041: 8065 LEESBURG PIKE, VIENNA, VA 22182
0042: 4905 ELM ST., BETHESDA, MD 20814
0043: 2200 M STREET, NW, WASHINGTON, DC 20031
0044: 520 COLLINS AVENUE, MIAMI BEACH, FL 33139
0045: THE VILLAGE OF MERRICK PARK, CORAL GABLES, FL 33146
0046: 19021 BISCAYNE BLVD., AVENTURA, FL 33180
0047: 1441 BRICKELL AVENUE, MIAMI, FL 33131
0048: 1750 NORTH CLARK STREET, CHICAGO, IL 60614
0049: 900 NORTH MICHIGAN AVENUE, CHICAGO, IL 60611
0050: 799 CENTRAL AVENUE, HIGHLAND PARK, IL 60035
0051: 200 WEST MONROE STREET, CHICAGO, IL 60606
0052: 4023 OAK LAWN AVENUE, DALLAS, TX 75219
0053: 8611 HILLCREST RD., DALLAS, TX 75225
0054: 300 EAST COLORADO BOULEVARD SUITE 201, PASADENA, CA 91101
0055: 8590 SUNSET BOULEVARD SUITE 100, WEST HOLLYWOOD, CA 90069

CONTINUED ON NEXT PAGE

_____ / _____
AUTHORIZED REPRESENTATIVE                      DATE

**UT-3g (3-92)**

# National Casualty Company

**ENDORSEMENT NO.** _0000_



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

SCHEDULE A - CONTINUED
CONTINUED FROM FORM KR-GL-D-1 "COMMERCIAL GENERAL LIABILITY-DECLARATIONS"

0056: 201 SANTA MONICA BOULEVARD, SANTA MONICA, CA 90401
0057: 10960 WILSHIRE BOULEVARD, LOS ANGELES, CA 90024
0058: 550 DEEP VALLEY DRIVE, ROLLING HILLS ESTATE, CA 90274
0059: 10220 CONSTELLATION BOULEVARD, CENTURY CITY, CA 90067
0060: 21530 OXNARD STREET, WOODLAND HILLS, CA 91367
0061: 5400 ROSECRANS AVE, HAWTHORNE, CA 90250
0062: 13445 MAXELLA BLVD, LOS ANGELES, CA 90292
0063: 9601 WILSHIRE BLVD, BEVERLY HILLS, CA 90210
0064: 1835 SEPULVEDA BLVD, LOS ANGELES, CA 90025
0065: 16830 VENTURA BLVD, ENCINO, CA 91436
0066: 444 S. FLOWER, LOS ANGELES, CA 90071
0067: 112 S. LAKEVIEW CANYON ROAD, THOUSAND OAKS, CA 91362
0068: 207 GOODE AVENUE, GLENDALE, CA 91203
0069: 301 PINE STREET, SAN FRANCISCO, CA 94104
0070: 4 EAST 4TH AVENUE, SAN MATEO, CA 94401
0071: 440 PORTAGE AVENUE, PALO ALTO, CA 94306
0072: 2055 UNION ST, SAN FRANCISCO, CA 94123
0073: 747 MARKET STREET, SAN FRANCISCO, CA 94103
0074: 19540 JAMBOREE ROAD, IRVINE, CA 92612
0075: 1980 MAIN ST, IRVINE, CA 92614
0076: 9465 WILSHIRE BOULEVARD SUITE 200, BEVERLY HILLS, CA 90212
0077: ONE PARK AVE, NEW YORK, NY 10016
0078: 895 BROADWAY, NEW YORK, NY 10003
0079: 21010 PACIFIC COAST HIGHWAY, SUITE A105, HUNTINGTON BEACH, CA 92648
0080: 4444 WESTHEIMER RD, HOUSTON, TX 77027
0081: 10 EAST 53RD ST, NEW YORK, NY 10022
0082: EQUINOX 92ND ST, TBD, NEW YORK, NY 10128
0083: EQUINOX HOLLYWOOD, TBD, HOLLYWOOD, CA 90028

AUTHORIZED REPRESENTATIVE                    DATE

**UT-3g (3-92)**

# National Casualty Company

Home Office
Madison, Wisconsin
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

**KR-GL-D-1**
**(07/07)**

# COMMERCIAL GENERAL LIABILITY - DECLARATIONS

Policy No.        KKO0000005740000        Policy Period: 09/01/15    to 09/15/16    12:01 am Standard Time
Replacement No.   KKO0000004742300

**NAMED INSURED AND ADDRESS:**                    **FORM OF BUSINESS**

EQUINOX HOLDINGS, INC.                    ☐ Individual        ☐ Limited Liability Company
ONE PARK AVENUE                           ☐ Partnership       ☒ Organization, including a
NEW YORK, NY 10016                                               Corporation (but not including a
                                                                 Partnership, Joint Venture or Limited
                                                                 Liability Company)

                                          ☐ Joint Venture

**RETROACTIVE DATE:**  (CG 00 02 only)  This insurance does not apply to "bodily injury" or "property damage" or "personal injury and advertising injury" which occurs before the following Retroactive Date: _____ (Enter date or NONE if no Retroactive Date Applies)

**LIMITS OF INSURANCE**

| | |
|---|---|
| General Aggregate Limit (Other than Products – Completed Operations) | NONE |
| Products – Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You Limit | $ 1,000,000 any one premises |
| Medical Expense Limit | EXCLUDED any one person |

**SCHEDULE OF LOCATIONS:**

| | |
|---|---|
| 0001 | 897 BROADWAY, NEW YORK,  NY 10003 |
| 0002 | 2465 BROADWAY, NEW YORK,  NY 10025 |
| 0003 | 205 EAST 85TH STREET, NEW YORK,  NY 10028 |
| 0004 | 140 EAST 63RD STREET, NEW YORK,  NY 10021 |
| 0005 | 250 EAST 54TH STREET, NEW YORK,  NY 10022 |
| 0006 | 1633 BROADWAY, NEW YORK,  NY 10019 |
| 0007 | 521 FIFTH AVENUE, NEW YORK,  NY 10175 |
| 0008 | 420 LEXINGTON AVENUE, NEW YORK,  NY 10170 |
| 0009 | 14 WALL STREET, NEW YORK,  NY 10005 |
| 0010 | 54 MURRAY STREET, NEW YORK,  NY 10007 |
| 0011 | 97 GREENWICH AVENUE, NEW YORK,  NY 10014 |
| 0012 | 10 COLUMBUS CIRCLE, NEW YORK,  NY 10019 |
| 0013 | 69 PRINCE STREET, NEW YORK,  NY 10012 |
| 0014 | ONE PARK AVENUE, NEW YORK,  NY 10016 |
| | CONTINUED ON FORM UT-3G SCHEDULE A |

**PREMIUM**
Advance Premium for this Coverage Part is    $ ▮▮▮▮▮▮
Premium above includes    $ ▮▮▮▮▮▮
for the Terrorism Risk Insurance Act.

**ENDORSEMENTS ATTACHED TO THIS COVERAGE PART:**

| | | | | |
|---|---|---|---|---|
| KR-GL-SP-2(04/14) | KR-GL-SP-1(04/07) | CG0001(04/13) | KR-GL-67(04/07) | KR-GL-94(01/08) |
| KR-GL-43(04/07) | KR-GL-51(10/11) | KR-GL-36(04/07) | UT-3G(03/92) | KR-GL-48(04/07) |
| KR-GL-79(04/07) | KR-GL-37(04/07) | GL-58S(12/93) | KR-GL-109(07/09) | KR-GL-119(10/11) |
| KR-GL-136(10/11) | UT-3G-1 (03/92) | CG0224(10/93) | CG0429(12/04) | CG2001(04/13) |
| CG2002(11/85) | CG2011(04/13) | CG2018(04/13) | CG2026(04/13) | CG2028(04/13) |
| CG2106(05/14) | CG2116(04/13) | CG2135(10/01) | CG2147(12/07) | CG2167(12/04) |
| CG2196(03/05) | CG2407(01/96) | CG2170(01/08) | CG2176(01/08) | CG0104(12/04) |
| CG0163(07/11) | CG2621(10/91) | | | |

**KR-GL-D-1**                    **(Page 1 of 1)**                    07/07

KKO0000005740000

# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART

Please read your policy carefully.

**DECLARATIONS PAGES**

    Named Insured and Mailing Address

    Policy Period

    Description of Business and Location

    Coverages and Limits of Insurance

**SECTION I - COVERAGES**                       **Beginning on Page**

    Coverage A -               Insuring Agreement ........................................... 1

        Bodily Injury

        and Property Damage      Exclusions ...................................................... 2

        Liability

    Coverage B -               Insuring Agreement ........................................... 5

        Personal and

        Advertising             Exclusions ...................................................... 6

        Injury Liability

    Coverage C -               Insuring Agreement ........................................... 7

        Medical Payments        Exclusions ...................................................... 7

**SECTION II - WHO IS AN INSURED** ............................................................................... 8

**SECTION III - LIMITS OF INSURANCE** ........................................................................... 9

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

    Bankruptcy ...................................................................................................... 10

    Duties In The Event of Occurrence, Claim or Suit ........................................... 10

    Legal Action Against Us .................................................................................. 10

    Other Insurance .............................................................................................. 11

    Premium Audit ................................................................................................. 11

    Representations ............................................................................................... 11

    Separation of Insureds .................................................................................... 11

    Transfer of Rights of Recovery Against Others To Us ..................................... 12

    When We Do Not Renew ................................................................................. 12

**SECTION V – DEFINITIONS** .......................................................................................... 12

**COMMON POLICY CONDITIONS**

    Cancellation

    Changes

    Examination of Your Books and Records

    Inspections and Surveys

    Premiums

    Transfer of Your Rights and Duties Under This Policy

**ENDORSEMENTS (If Any)**

KR-GL-SP-2                                      04/14

**POLICY NUMBER:** KKO0000005740000

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.  Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**  This insurance applies to "bodily injury" and "property damage" only if:

**(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.   Pollution**

**(1)**   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)**   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)**   "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)**   "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)**   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)**   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)**   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)**   Any insured; or

**(ii)**   Any person or organization for whom you may be legally responsible; or

**(d)**   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)**   "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)**   "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)**   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

   © Insurance Services Office, Inc., 2012

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.   Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.** **Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.** **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

 © Insurance Services Office, Inc., 2012

**p.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q.** **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.** **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.** **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**e.   Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f.   Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.   Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.   Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.   Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.   Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.   Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.   Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.   Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.   Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.   War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.** **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

**1.** **Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2.** **Exclusions**

We will not pay expenses for "bodily injury":

**a.** **Any Insured**

To any insured, except "volunteer workers".

**b.** **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f.** **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.** **Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

© Insurance Services Office, Inc., 2012

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by; you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**2.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage **C**;

    **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A**; and

    **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

© Insurance Services Office, Inc., 2012

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

© Insurance Services Office, Inc., 2012

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

 © Insurance Services Office, Inc., 2012

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** **Does not include vending machines or other property rented to or located for the use of others but not sold.**

**22.** **"Your work":**

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

©Insurance Services Office, Inc., 2012
CG 00 01 04 13

# National Casualty Company

**ENDORSEMENT NO.**  0000

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT REDEFINED

This endorsement modifies insurance provided under the following:

SELF-INSURED RETENTION ENDORSEMENT
(Defense Costs Included In Retention)

A. **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event of Occurrence, Offense, Claim or Suit** is replaced by the following:

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a. You must see to it that the Claims Service Company is notified promptly of an "occurrence" or an offense which may result in a claim. Notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. You must see to it that we are notified promptly of an "occurrence" or an offense that may result in a claim or "suit," which is likely to involve this policy or that involves the following:

   (1) Fatality;

   (2) Paralysis of any part of the body;

   (3)  A major extremity or multiple minor extremity amputation;

   (4) A brain or brain stem injury;

   (5) Severe burns or disfigurement;

   (6) Partial or total blindness;

   (7) Loss or impairment of hearing;

   (8) A heart attack;

   (9) Sexual molestation, abuse, rape or harassment; or

   (10) Reserves that exceed 50% of the Self-Insured Retention

UT-3g (3-92)

Notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses. Failure to notify us of any act or omission which at the time of its happening did not appear to give rise to claims hereunder, shall not prejudice such claims; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**c.** If a claim is made or "suit" is brought against any Insured involving this policy, you must see to it that we receive prompt written notice of the claim or "suit."

---

AUTHORIZED REPRESENTATIVE                    DATE

**UT-3g (3-92)**

128

# National Casualty Company

ENDORSEMENT NO. ___0000___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SELF-INSURED RETENTION ENDORSEMENT
## (Defense Costs Included In Retention)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

AGREEMENT: Such insurance is as afforded by this policy shall apply in excess of the Self-Insured Retention as stated below:

SELF-INSURED RETENTION: The words "Self-Insured Retention" shall mean the amount of loss which the Insured shall pay first from claims otherwise covered under the policy. Such Self-Insured Retention shall be primary or underlying to such insurance as is afforded by this policy. The insured shall pay 100% of such Self-Insured Retention before this policy applies.

SELF-INSURED RETENTION

_____ Each Claim

$250,000_____ Each Occurrence

_____ Aggregate

_____ Maintenance

(Fill in amounts, if applicable.)

The Limits of Insurance of this policy shall be excess of and not reduced by the Insured's payments of damages and/or defense costs under the Self-Insured Retention(s).

If the Self-Insured Retention applies to each claim, the Insured shall be responsible for and pay up to that retention all damages arising from each claim against the Insured to which this policy applies.

If the Self-Insured Retention applies to each "occurrence," the Insured shall be responsible for and pay up to that retention all damages for which the Insured is liable in all claims and/or "suits" arising from one "occurrence," regardless of the number of persons or companies making such claim(s) or properties sustaining such damages.

If the Self-Insured Retention applies in the aggregate, the Insured shall be responsible for and pay all damages, either on an each claim or each "occurrence" basis as applicable, up to the aggregate Self-Insured Retention.

Upon satisfaction by the Insured of the aggregate Self-Insured Retention, we shall have the right, subject to the maintenance Self-Insured Retention if applicable, to assume charge of the settlement or defense of any claim or "suit" against the Insured not yet settled, whether or not reported to us.

If the maintenance Self-Insured Retention applies after the aggregate Self-Insured Retention has been satisfied by the Insured, the Insured shall be responsible for and pay all damages, either on an each claim or each occurrence basis, as applicable, up to the maintenance Self-Insured Retention for each claim or "occurrence."

Loss Adjustment Expenses and Defense Costs as defined in this Section are included within the Self-Insured Retention(s).

It is agreed that all policy provisions regarding the right and duty of the Company to defend any "suit" against the Insured seeking damages on account of "occurrence" covered hereunder are deleted and replaced by the following:

**A.** The Company shall have no obligation to participate in or to assume charge of the investigation, defense, or settlement of any claims made, or "suits" brought or proceedings instituted against the Insured unless the retention of the Insured has been paid; but the Company shall have the right and be given the opportunity to associate with the Insured and the Insured's defense counsel in defense and control of any claim, "suit," or proceeding relative to any "occurrence" which, in the opinion of the Company, may involve liability on the part of the Company under the terms of this policy. In the event of the actual or probable exhaustion or reduction of the Self-Insured Retention, the Company, at its sole discretion, may elect to assume control and defense of any or all claims, "suits"

KR-GL-67 (4-07)                    Page 1 of 3

and proceedings which, in the Company's opinion, may involve this policy.

**B.** Unless the Company elects otherwise, the Insured shall be solely responsible for the investigation, defense, settlement and final disposition of any claim made or "suit" brought or proceedings instituted against the Insured to which this policy would apply up to the limit of the Self-Insured Retention. The Insured shall use due diligence and prudence to settle all such claims and "suits" which, in the exercise of sound judgment should be settled; provided, however, that the Insured shall not make or agree to any settlement for any sum, which would involve the limits of this insurance without the prior written approval of the Company.

For purposes of this endorsement, "Loss Adjustment Expense" shall mean expenditures, including, but not limited to, investigations, experts, adjustment services, legal services, court costs and other such costs.

We shall have the right, but no obligation, in all cases, at our expense, to assume charge of the defense or settlement of any claim, and, upon our written request, you shall tender such portion of the Self-Insured Retention as we may deem necessary to complete settlement of such claim.

Defense costs, as used herein, means:

1. Claims expense, including attorneys fees, incurred by or on behalf of the Insured in the handling and defense of claims or "suits" against the Insured arising out of an "occurrence" to which this policy applies, but excluding salaries or wages of the Insured's officers or employees or the Insured's office expenses.

2. Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for the bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the Insured in the "suit."

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to apply the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we

have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

We shall have the right and opportunity to associate, at our own expense, with the Insured in the defense, appeal, settlement, or control of any claim or "suit" to which this policy applies seeking damages in excess of the Self-Insured Retention. In such event, we and the Insured shall cooperate fully.

Should any claim or "suit" to which this policy applies appears likely to exceed the Self-Insured Retention, no defense costs shall be incurred on behalf of us without our prior consent.

Claim means, whenever used in this policy, a demand received by the Insured for money or services, including the service of suit or institution of arbitration proceedings against the Insured.

**A.** **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event of Occurrence, Offense, Claim or Suit** is replaced by the following:

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a. You must see to it that the Claims Service Company is notified promptly of an "occurrence" or an offense which may result in a claim. Notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. You must see to it that we are notified promptly of an "occurrence" or an offense that may result in a claim or "suit," which is likely to involve this policy or that involves the following:

      (1) Fatality;

      (2) Amputation of a major extremity;

      (3) Any serious head injury, including skull fracture, loss of sight of either or both eyes, or serious hearing impairment;

      (4) Any injury to the spinal cord resulting in hemiplegia/paraplegia/quadriplegia;

      (5) Any disability of more than one year or where it appears reasonably likely that there will be a disability of more than one year;

      (6) Any burn of 25% of more of the body;

      (7) Heart or vascular disorders;

KR-GL-67 (4-07)                           Page 2 of 3

**(8)** Accident where multiple injuries are involved;

**(9)** Cosmetic deformities;

**(10)** Loss of, or loss of function of, vital organ;

**(11)** Sexual molestation, abuse, rape, or harassment;

**(12)** Reserves at more than 50% of the Insured's Self-Insured Retention;

**(13)** Verdict potential at more than 75% of the Insured's Self-insured Retention;

**(14)** All potential coverage disputes of bad faith situations that may give rise to an excess of original policy limits judgment or an extra contractual obligation award; or

**(15)** Any "suit" in which the ad damnum exceeds the policy Limits of Insurance.

Notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses. Failure to notify us of any act or omission which at the time of its happening did not appear to give rise to claims hereunder, shall not prejudice such claims; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**c.** If a claim is made or "suit" is brought against any Insured involving this policy, you must see to it that we receive prompt written notice of the claim or "suit."

**B. SPECIAL CONDITIONS**

**1.** Under the terms and conditions of this Self-Insured Retention Endorsement, you shall contract with:

EQUINOX HOLDINGS, INC
(Name of Claims Service Company)

to administer claims handling within the Self-Insured Retention until the conclusion of all reported incidents or claims. The expiration or termination of this policy with us shall not absolve you of this obligation.

**2.** In the event of a cancellation, expiration or revision of the contract between you and the Claims Service Company, you will notify us within ten days from the date of such cancellation, expiration or revision of the contract. If you fail to contract with a substitute Claims Service Company acceptable to us or are unable to pay for covered damages, defense costs, or supplementary payments within the Self-Insured Retention you acknowledge that we shall have the right but not the obligation, including but not limited to contracting directly with a Claims Service Company, to administer claims handling within the Self-Insured Retention until the conclusion of all reported claims and you shall indemnify us for any costs or expenses incurred to administer claims handling within the Self-Insured Retention should we elect to exercise our rights under the circumstances set forth above, including the right to contract directly with a Claims Service Company.

**3.** We shall have the right but not the duty to assume charge of the defense and/or settlement of any claim or "suit" brought against the Insured and, upon written request from us, you shall tender such portion of the Self-Insured Retention as we may deem necessary to complete the settlement of such claim or "suit" and to pay for defense costs.

**4.** You shall provide us quarterly reports of all claims or incidents occurring within the Self-Insured Retention including a description of each claim and amounts paid or reserved. Each report is to be submitted within twenty (20) days following the end of each quarterly period and this shall apply in addition to the individual claim reporting requirements set forth above.

This policy will not drop down to assume or satisfy your obligation under the Self-Insured Retention.

AUTHORIZED REPRESENTATIVE       DATE

# National Casualty Company

**ENDORSEMENT NO.** 0000

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL GENERAL LIABILITY BROADENED COVERAGE

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A. SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions,** paragraph **a.** is replaced by:

**a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**B. SECTION I—COVERAGES, Coverage A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions,** paragraph **g.(2)** is replaced by:

**(2)** A watercraft you do not own that is:

    **(a)** Less than fifty-one (51) feet long; and

    **(b)** Not being used to carry persons or property for a charge.

**C. SECTION I—COVERAGES, Coverage B. PERSONAL AND ADVERTISING INJURY LIABILITY,** subsection **2. Exclusions,** paragraph **b.** and **c.** are replaced by:

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, if done at the direction of the insured with knowledge of its falsity;

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, whose first publication took place before the beginning of the policy period.

**D. SECTION I—COVERAGES, SUPPLEMENTARY PAYMENTS—COVERAGES A.** and **B.,** paragraph **1.b.** and **1.d.** are replaced by:

**b.** Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

**E.** The following replaces **SECTION II—WHO IS AN INSURED, 3.a.:**

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**F.** The following are added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph **2. Duties In The Event of Occurrence, Offense, Claim Or Suit:**

Knowledge of the "occurrence," offense, claim or "suit" by the agent, servant, or "employee" of an insured shall not in itself constitute your knowledge unless one of your officers, manager or partners has received notice of the "occurrence," offense, claim or "suit."

Failure by the agent, servant or "employee" of an insured (other than an officer, manager or partner) to notify us of an "occurrence" shall not constitute a failure to comply with Items **a.** and **b.** of this condition.

**G.** The following are added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**Unintentional Error or Omission**

Any unintentional error or omission in the description of or failure to completely describe, any premises or operations intended to be covered by this Coverage Part will not invalidate or affect coverage for those premises or operations. However, you must report such error or omission to us as soon as practicable after its discovery.

**Waiver of Right of Recovery**

We waive all rights of recovery when you have agreed to waive your rights of recovery when required by a written contract. However, this provision only applies if the written contract was executed prior to the date of the "occurrence."

**H.** With respect to this endorsement, the following replaces **SECTION V—DEFINITIONS**, paragraph **3.** and **14.:**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution or abuse of process;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Any publication of material including, but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Any publication of material, including but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**I.** **Broadened Coverage—Damage to Premises Rented to You**

**1.** The word **fire** is replaced with the phrase **fire or explosion** where it appears in:

**a.** **SECTION I—COVERAGES, Coverage A., 2. Exclusions, j. Damage to Property;**

**b.** **SECTION I—COVERAGES, Coverage A., 2. Exclusions,** last paragraph;

**c.** **SECTION III—LIMITS OF INSURANCE,** Item **6.;**

**d.** **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance,** Item **(1)(b).**

**2.** The Limit of Insurance applicable to Damage to Premises Rented to You is $300,000 unless a higher limit is specified on the Commercial General Liability Coverage Part Supplemental Declarations.

---

AUTHORIZED REPRESENTATIVE                          DATE

**Includes copyrighted material of ISO Properties, Inc., with its permission.**
**Copyright, ISO Properties, Inc., 2007**

# National Casualty Company

**ENDORSEMENT NO.** _0000_

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED—MEDICAL PERSONNEL

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SCHEDULE**

**Name of Person(s) or Organization(s):**

EMPLOYEES AND VOLUNTEERS WHO ARE NURSES, EMERGENCY TECHINICIANS, FIRST AID ATTENDANTS AND PARAMEDICS.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**SECTION II—WHO IS AN INSURED** is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to liability arising out of your activities or operations. The person(s) or organization(s) shown in the Schedule above shall not be an insured for "bodily injury" or "personal and advertising injury" arising out of:

1.  The rendering of or failure to render professional health care services other than "emergency medical services"; or

2.  Acts or services performed by any insured who is not properly registered, licensed or certified to perform such acts or services, if such licensing, registration or certification is required by law or by any federal, state, or local governmental, regulatory or administrative agency.

For the purposes of this endorsement, "emergency medical services" means the providing or administering of immediate first aid care, emergency care or basic life support care services to any person(s).

AUTHORIZED REPRESENTATIVE                    DATE

**Includes copyrighted material of ISO Properties, Inc., with its permission.**
**Copyright, ISO Properties, Inc., 1998**

KR-GL-51 (10-11)                                      Page 1 of 1

# National Casualty Company

**ENDORSEMENT NO.** __0000__

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DELETION—CO-EMPLOYEE EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** Paragraph **e. Employer's Liability** is deleted if "bodily injury" to an "employee":

**(1)** Arises out of an action or omission of a fellow "employee;" and

**(2)** Arises out of the fellow "employee's" employment or while performing duties related to the conduct of your business.

For the purposes of this endorsement, **SECTION II—WHO IS AN INSURED,** Paragraph **2.,** Part **a.(1),** Subparagraphs **(a), (b)** and **(c)** are deleted.

AUTHORIZED REPRESENTATIVE                    DATE

KR-GL-36 (4-07)                    **Page 1 of 1**

# National Casualty Company

**ENDORSEMENT NO.** ___0000_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF LIABILITY INSURANCE AFFORDED UNDER ANOTHER POLICY

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claim or "suit" which is covered under any other insurance policy specifically designated in the Schedule below.

This exclusion applies to any claim or "suit" which:

1.   Is covered under any replacement, renewal or extension of any such other policy; or
2.   Would have been covered under any such other policy, but for the exhaustion of limits, cancellation or expiration of such policy.

### Schedule of Designated Policies

| Policy | Company | Operations or Premises |
|---|---|---|
| KKO 57401-00 | NATIONAL CASUALTY CO | BLINK HOLDINGS, INC. OPERATIONS (HEALTH CLUB) |

_____          /_____

AUTHORIZED REPRESENTATIVE                                         DATE

KR-GL-48 (4-07)                          **Page 1 of 1**

# National Casualty Company



**ENDORSEMENT NO.** ___0000___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The **Other Insurance** condition of this Coverage Part is replaced by the provision marked below with an "X" in the box:

**Other Insurance**

☐ If other valid and collectible insurance with any other insurer including any formal self-insured retention programs is available to you covering a loss also covered by this Coverage Part, other than insurance that is in excess of the insurance afforded by this Coverage Part, the insurance afforded by this Coverage Part shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this insurance subject to the terms, conditions and limitations of other insurance.

☐ Coverage afforded under this Coverage Part is primary insurance and Other Insurance shall not apply as respects

_____

as additional insureds.

The **Cancellation** condition of this Coverage Part is amended by the addition of the following if an "X" is in the box:

☒ Cancellation

The following is added: It is a condition of the Policy by this Endorsement that the Policy will not be cancelled without _*30 DAYS/10 DAYS NON PAY_ days' prior written notice to:

** _____ and further, that the person(s) named above are not liable for the payment of any premiums or assessments on this Policy.

*30 DAYS EXCEPT 10 DAYS FOR NON PAYMENT OF PREMIUM _____

**ANY PERSON OR ORGANIZTION TO WHOM YOU BECOME LEGALLY OBLIGATED BY VALID WRITTEN CONTRACT _____

_____

_____

_____

_____

_____       /_____
AUTHORIZED REPRESENTATIVE                              DATE

# National Casualty Company

**ENDORSEMENT NO.** 0000

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| KKO0000005740000 | 09/01/15 | EQUINOX HOLDINGS, INC. | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following replaces **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance,** Item **b. Excess Insurance:**

**b.  Excess Insurance**

This insurance is excess over:

**(1)**  Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)**  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)**  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)**  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)**  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion **g.** of **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

**(2)**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the

products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(3)**  Any other primary insurance available to you for damages arising out of premises or operations for which any person or organization is obligated contractually to indemnify you.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)**  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

AUTHORIZED REPRESENTATIVE                                    DATE

**Includes copyrighted material of ISO Properties, Inc., with its permission.**
**Copyright, ISO Properties, Inc., 1998**

KR-GL-37 (4-07)                          Page 1 of 1

**POLICY NUMBER:** KKO0000005740000

**COMMERCIAL GENERAL LIABILITY**
**CG 20 01 04 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

©Insurance Services Office, Inc., 2012

**POLICY NUMBER:** KKO0000005740000

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 12 07

© ISO Properties, Inc., 2006

Page 1 of 1

**POLICY NUMBER:** KKO0000005740000

**COMMERCIAL GENERAL LIABILITY**
**CG 01 63 07 11**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES –
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III –** Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II –** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II –** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II –** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© Insurance Services Office, Inc., 2010

    e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**C.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

    **e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** Paragraph **3.** of **Section IV – Commercial General Liability Conditions** is replaced by the following:

**3. Legal Action Against Us**

    **a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

      **(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      **(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

    **b.** With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

    However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

      **(1)** Brings an action to declare the rights of the parties under the policy; and

      **(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**E.** The following provision is added and supersedes any provision to the contrary:

    Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**F.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

 ©Insurance Services Office, Inc., 2010

# EXHIBIT D

**National Casualty Company**

**WORKERS COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE POLICY – INFORMATION PAGE**

**INSURER:**
NATIONAL CASUALTY COMPANY

1100 Locust St. Dept 3000
Des Moines, IA 50391-3000

**POLICY NO:**  WCC330508A

**RENEWAL OF:**  WCC330508A
NCCI Company No:  18805
Account No:  330508
**RISK ID #911409895**
N.J. Taxpayer Identification No.  134034296000

**ITEM 1.  NAMED INSURED AND MAILING ADDRESS:**
EQUINOX HOLDINGS INC
ONE PARK AVENUE
NEW YORK NY 10016

**PRODUCER NAME AND ADDRESS:**
K & K INSURANCE GROUP
1712 MAGNAVOX WAY
FORT WAYNE IN 46804

**PRODUCER NO.:**  93627

**LEGAL ENTITY:**  CORPORATION

**OTHER WORKPLACES NOT SHOWN ABOVE:**  (See Workers Compensation Classification Schedule)

**ITEM 2.  POLICY PERIOD:**  From:  09-01-2015  To:  09-15-2016
Effective 12:01 A.M. Standard Time at the Insured's mailing address.

**ITEM 3.  COVERAGE:**

A.  Workers Compensation Insurance:  Part One of the policy applies to the Workers Compensation Law of the states listed here:
CA CT DC FL GA IL MA MD NJ NY TX VA

B.  Employers' Liability Insurance:  Part Two of the policy applies to work in each state listed in Item 3.A.  The limits of liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident: | $ 1,000,000 | each accident |
| Bodily Injury by Disease: | $ 1,000,000 | policy limit |
| Bodily Injury by Disease: | $ 1,000,000 | each employee |

C.  Other States Insurance:  Part Three of the policy applies to the states, if any, listed here:
AL AK AZ AR CO DE HI ID IN IA KS KY LA ME MI MN MS MO MT NE NV NH NM NC OK OR PA RI SC SD TN UT VT WV WI

D.  This Policy includes these Endorsements and Schedules:
See Schedule of Forms and Endorsements.

**ITEM 4.  PREMIUM:**  The premium for this Policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.  All information required on the Workers Compensation Classification Schedule is subject to verification and change by audit.

Minimum Premium: $ ▮▮▮▮▮

Total Estimated
Annual Premium: $ ▮▮▮▮▮

Audit Period: **ANNUAL**

Issued At:
Date: 09-02-15

Countersigned by _____

WC 00 00 01 A

Copyright 1987 National Council on Compensation Insurance

Insured Copy

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY                    WC 04 00 01 A

# INFORMATION PAGE

**NATIONAL CASUALTY COMPANY**                           Policy No.      **WCC330508A**
Insurer ID No(s).  **18805**                            Prior Policy No.  **WCC330508A**

1.  Named Insured:  **EQUINOX HOLDINGS INC**
    Mailing Address:  **ONE PARK AVENUE**
                      **NEW YORK NY 10016**

| | |
|---|---|
| | Individual |
| X | Corporation |
| | Partnership |
| | LLC |
| | LLP |
| | Other: **CORPORATION** |

FEIN:  **13-4034296**

Intra/Interstate Risk ID No.   **RISK ID #911409895**

Other workplaces not shown above:   **See Schedule of Locations**

2.  The policy period is from  **09-01-2015** to  **09-15-2016** 12:01 A.M. standard time at the insured's mailing address.

3.  A.  Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

    **CA CT DC FL GA IL MA MD NJ NY TX VA**

    B.  Employers Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3A. The limits of our liability under Part Two are:

    | | | |
    |---|---|---|
    | Bodily Injury by Accident | **1,000,000** | each accident |
    | Bodily Injury by Disease | **1,000,000** | policy limit |
    | Bodily Injury by Disease | **1,000,000** | each employee |

    C.  Other States Insurance: Part Three of the policy applies to the states, if any, listed here:

    **AL AK AZ AR CO DE HI ID IN IA KS KY LA ME MI MN MS MO MT NE NV NH NM NC OK OR PA RI SC SD TN UT VT WV WI**

    D.  This policy includes these endorsements and schedules:
        **See Schedule of Forms and Endorsements**

4.  The premium for this policy will be determined by our Manual of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Code No. | Classifications | Premium Basis Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| **See Extension of Information Page** | | | | |

| | | | |
|---|---|---|---|
| Experience Modification | **See Extension of Information Page** | Total Estimated Annual Premium | $ ████ |
| Minimum Premium | $ ████ | Deposit Premium | $ |
| Premium Adjustment Period: | **ANNUAL** | Countersigned By | _Michael D. Miller_ |
| Producer Information: | **K & K INSURANCE GROUP** | 93627 | |
| Servicing/Issuing Office | | | |

Date _____

Copyright 1998 by the Workers' Compensation Insurance Rating Bureau of California.  All rights reserved.
**From the WCIRB's California Workers' Compensation Insurance Forms Manual Copyright 2001.**

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                                   WC 00 00 00 C
(Ed. 1-15)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

### GENERAL SECTION

**A.  The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B.  Who is Insured**

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C.  Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D.  State**

State means any state of the United States of America, and the District of Columbia.

**E.  Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE
### WORKERS COMPENSATION INSURANCE

**A.  How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  Bodily injury by accident must occur during the policy period.

2.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.  We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D.  We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3.  litigation costs taxed against you;

4.  interest on a judgment as required by law until we offer the amount due under this insurance; and

5.  expenses we incur.

**E.  Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other

1 of 6

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Insured Copy

**WC 00 00 00 C**          **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**
(Ed. 1-15)

insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

## F.   Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

## G.   Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

## H.   Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the

workers compensation law that apply to:

   a.   benefits payable by this insurance;

   b.   special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO
## EMPLOYERS LIABILITY INSURANCE

## A.   How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

## B.   We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Insured Copy

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 00 00 00 C**
(Ed. 1-15)

---

such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

C.  **Exclusions**

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901 et seq.), the Nonappropriated Fund Instrumentalities Act (5 U.S.C. Sections 8171 et seq.), the Outer Continental Shelf Lands Act (43 U.S.C. Sections 1331 et seq.), the Defense Base Act (42 U.S.C. Sections 1651–1654), the Federal Mine Safety and Health Act (30 U.S.C. Sections 801 et seq. and 901–944), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 U.S.C. Sections 51 et seq.), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member of the crew of any vessel, and does not cover punitive damages related to your duty or obligation to provide transportation, wages, maintenance, and cure under any applicable maritime law;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Sections 1801 et seq.) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D.  **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E.  **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

3 of 6

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.
Insured Copy

**WC 00 00 00 C**                    **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**
(Ed. 1-15)

---

F.  **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G.  **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1.  Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

    A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2.  Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

    Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

H.  **Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

I.  **Actions Against Us**

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

**PART THREE
OTHER STATES INSURANCE**

A.  **How This Insurance Applies**

1.  This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2.  If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3.  We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4.  If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

B.  **Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

**PART FOUR
YOUR DUTIES IF INJURY OCCURS**

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.  Provide for immediate medical and other services required by the workers compensation law.

2.  Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3.  Promptly give us all notices, demands and legal

4 of 6

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Insured Copy

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

WC 00 00 00 C
(Ed. 1-15)

papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE
## PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Insured Copy

**WC 00 00 00 C**                    WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
(Ed. 1-15)

## PART SIX
## CONDITIONS

A. **Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

B. **Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

C. **Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

D. **Cancelation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

E. **Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

6 of 6

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Insured Copy

WC 00 03 11 A                    **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**SCHEDULE**

| EMPLOYEES | STATE OF EMPLOYMENT | DESIGNATED WORKERS COMPENSATION LAW |
|---|---|---|
| ALL OFFICERS AND EMPLOYEES, INCLUDING ANY VOLUNTEERS NOT SUBJECT TO THE WORKERS COMPENSATION LAW EXCEPT MASTERS AND MEMBERS OF THE CREW OF ANY VESSEL | CA CT DC FL GA IL MD NY TX VA MA NJ | STATE OF HIRE |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 09-01-15      Policy No. WCC330508A                    Endorsement No.

Insured EQUINOX HOLDINGS INC                                    Premium $ INCL.

Insurance Company NATIONAL CASUALTY COMPANY

Countersigned By _____

Copyright 1991 National Council on Compensation Insurance.                                    Page 2 of 2

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**          WC 04 03 01 B

(Ed. 01-12)

### POLICY AMENDATORY ENDORSEMENT–CALIFORNIA

It is agreed that, anything in the policy to the contrary notwithstanding, such insurance as is afforded by this policy by reason of the designation of California in Item 3 of the Information Page is subject to the following provisions:

1.  **Minors Illegally Employed -- Not Insured.** This policy does not cover liability for additional compensation imposed on you under Section 4557, Division IV, Labor Code of the State of California, by reason of injury to an employee under sixteen years of age and illegally employed at the time of injury.

2.  **Punitive or Exemplary Damages -- Uninsurable.** This policy does not cover punitive or exemplary damages where insurance of liability therefor is prohibited by law or contrary to public policy.

3.  **Increase in Indemnity Payment -- Reimbursement.** You are obligated to reimburse us for the amount of increase in indemnity payments made pursuant to Subdivision (d) of Section 4650 of the California Labor Code, if the late indemnity payment which gives rise to the increase in the amount of payment is due less than seven (7) days after we receive the completed claim form from you. You are obligated to reimburse us for any increase in indemnity payments not covered under this policy and will reimburse us for any increase in indemnity payment not covered under the policy when the aggregate total amount of the reimbursement payments paid in a policy year exceeds one hundred dollars ($l00).

    If we notify you in writing, within 30 days of the payment, that you are obligated to reimburse us, we will bill you for the amount of increase in indemnity payment and collect it no later than the final audit. You will have 60 days, following notice of the obligation to reimburse, to appeal the decision of the insurer to the Department of Insurance.

4.  **Application of Policy.** Part One, "Workers Compensation Insurance", A, "How This Insurance Applies", is amended to read as follows:

    This workers compensation insurance applies to bodily injury by accident or disease, including death resulting therefrom. Bodily injury by accident must occur during the policy period. Bodily injury by disease must be caused or aggravated by the conditions of your employment. Your employee's exposure to those conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.  **Rate Changes.** The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

6.  **Long Term Policy.** If this policy is written for a period longer than one year, all the provisions of this policy shall apply separately to each consecutive twelve-month period or, if the first or last consecutive period is less than twelve months, to such period of less than twelve months, in the same manner as if a separate policy had been written for each consecutive period.

7.  **Statutory Provision.** Your employee has a first lien upon any amount which becomes owing to you by us on account of this policy, and in the case of your legal incapacity or inability to receive the money and pay it to the claimant, we will pay it directly to the claimant.

8.  Part Five, "Premium", E, "Final Premium", is amended to read as follows:

    The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

    If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

    a.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.
    b.  If you cancel, final premium may be more than pro rata; it will be based on the time this policy was in force, and may be increased by our short-rate cancelation table and procedure. Final premium will not be less than the pro rata share of the minimum premium.

**WC 04 03 01 B**                    **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**(Ed. 01-12)**

It is further agreed that this policy, including all endorsements forming a part thereof, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in this policy or such endorsements shall affect such contract or any rights, duties, or privileges arising therefrom.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 09-01-15      Policy No. WCC330508A                 Endorsement No.

Insured EQUINOX HOLDINGS INC                                  Premium $ INCL.

Insurance Company NATIONAL CASUALTY COMPANY

Countersigned By _____

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**　　　　　WC 04 03 10

# DUTY TO DEFEND-CALIFORNIA

The insurance afforded by Part One, Section **C,** "We Will Defend", is hereby deleted and replaced with the following:

**WE WILL DEFEND**

We have the right and duty to defend at our expense any claim or proceeding against you before the California Workers' Compensation Appeals Board or its equivalent in any other state (and any appeal of a decision therefrom) for the benefits payable by this workers' compensation insurance. We have the right to investigate and settle these claims or proceedings.

We have no duty to defend a claim, proceeding, or suit that is not covered by this insurance.

Nothing contained in this Section shall amend, modify, restrict or otherwise alter any obligations or conditions under Part Two-Employer's Liability Insurance of the policy.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 09-01-15　　　Policy No. WCC330508A　　　　　　Endorsement No.

Insured EQUINOX HOLDINGS INC　　　　　　　　　　　　Premium $ INCL.

Insurance Company NATIONAL CASUALTY COMPANY

　　　　　　　　　　　　　　　Countersigned By _____

**Copyright 1998 by the Workers' Compensation Insurance Rating Bureau of California. All rights reserved.**
**From the WCIRB's California Workers' Compensation Insurance Forms Manual Copyright 1999.**

Insured Copy

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**       WC 04 03 60 B
                                                                            (Ed. 01-15)

## EMPLOYERS' LIABILITY COVERAGE AMENDATORY ENDORSEMENT—CALIFORNIA

The insurance afforded by Part Two (Employers' Liability Insurance) by reason of designation of California in item 3 of the information page is subject to the following provisions:

**A.** **"How This Insurance Applies,"** is amended to read as follows:

   A.  How This Insurance Applies

      This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury means a physical injury, including resulting death.

      1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.
      2.  The employment must be necessary or incidental to your work in California.
      3.  Bodily injury by accident must occur during the policy period.
      4.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
      5.  If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**C.**  The "**Exclusions**" section is modified as follows (all other exclusions in the "**Exclusions**" section remain as is):

      1.  Exclusion 1 is amended to read as follows:
          1.  liability assumed under a contract.

      2.  Exclusion 2 is deleted.

      3.  Exclusion 7 is amended to read as follows:
          7.  damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, termination of employment, or any personnel practices, policies, acts or omissions.

      4.  The following exclusions are added:
          1.  bodily injury to any member of the flying crew of any aircraft.
          2.  bodily injury to an employee when you are deprived of statutory or common law defenses or are subject to penalty because of your failure to secure your obligations under the workers' compensation law(s) applicable to you or otherwise fail to comply with that law.
          3.  liability arising from California Labor Code Section 2810.3 which relates to labor contracting.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective **09-01-15**       Policy No. **WCC330508A**       Endorsement No.

Insured **EQUINOX HOLDINGS INC**       Premium $ **INCL.**

Insurance Company **NATIONAL CASUALTY COMPANY**

                               Countersigned By  _____

© 2015 by the Workers' Compensation Insurance Bureau of California. All Rights Reserved.